HENRY C. WISNER v. ESTATE OF CHRISTOPHER R. MAB-
LEY, DECEASED.

*Estates of deceased persons — Consolidation of appeals — Trial by
jury—Extraordinary services of executor—Discretion as to
allowance—Commissions.*

1. Where an executor and residuary legatee *both* appeal from an
   order allowing the executor's annual account, and a jury is
   waived, the court should consolidate the two suits on its own
   motion.
2. Items in an executor's account, the allowance or disallowance of
   which is entirely *discretionary* with the court, cannot be sub-
   mitted to a jury. *Showers v. Morrill,* 41 Mich. 700; *Gott v.
   Culp,* 45 Id. 274; *Mower's Appeal,* 48 Id. 441.
3. While an appeal involving the settlement of an executor's account
   should be dealt with as an equitable rather than as a legal pro-
   ceeding, yet, in *proving* the account, improper evidence should
   be rejected on both sides, and, if admitted to the prejudice of the
   party complaining, a new trial will be granted, unless the proper
   remedy can be otherwise applied, and this whether the trial was
   by jury or before the court.
4. On a contested administration accounting *proper*, the parties have
   a right to a trial by jury, and to have the proper issue made up,
   if desired, in the circuit court. *Grovier v. Hall,* 23 Mich. 7.
5. Where, on the trial of an appeal from the allowance of an exec-
   utor's claim for extra compensation, a request is made for special
   findings, and the Court is asked to state *what* sum he allowed
   the executor for the *extraordinary* services mentioned in *each*
   finding, which was not done, if such extra allowance is for any
   services not included in those mentioned in the statute which
   may be thus compensated, an error is committed requiring a new
   trial, or the reduction of the amount allowed by the circuit
   judge to that allowed by the probate judge, and the affirmance
   of such modified judgment.
6. The discretion to be exercised in allowing the executor for *extra*
   services is a *legal* one, and must be based on *legal* testimony; and
   where improper testimony is received it is impossible to tell to
   what extent it might have influenced the judgment of the cir-
   cuit court in the exercise of such discretion, and an appeal will
   be sustained.

| 70 | 271 |
|----|-----|
| 74 | 144 |
| 70 | 271 |
| 88 | 615 |
| 70 | 271 |
| 103 | 299 |
| 70 | 271 |
| 117 | 210 |
| 70 | 271 |
| 124 | 563 |
| 70 | 271 |
| s38NW | 262 |
| 131 | 9352 |
| 70 | 271 |
| 154 | 355 |
| 70 | 271 |
| 158 | 2  2 |

7. Where a testator left a large share of his property to his widow as residuary legatee, and the will contained no instructions to his executor to look after the social standing or domestic relations of the widow or the family, or the disposition she might see fit to make of her property when it came to her possession, all testimony relating to *these* subjects, and the difficulties encountered by an executor, who presents an account for extra services, arising therefrom, and embarrassing him in the discharge of his trust duties, is improperly received in support of such claim, as is testimony relating to the custody and guardianship of the children, and services rendered for them or the widow by the executor.

8. The commissions allowed an executor by How. Stat. § 5959, are intended as compensation for the responsibility of collecting, keeping, or disbursing the moneys of the estate.

9. The provision of How. Stat. § 5959, authorizing such further allowance to an executor as the court may deem just and reasonable for any extraordinary services, not required in the common course of his duty, is intended to cover a class of services *not* included in How. Stat. §§ 5958, 9015; such, for instance, as securing property belonging to the estate and in use by surviving partners, or located in another state or county, suits to set aside fraudulent conveyances, garnishee proceedings, and securing the rights of the estate by bill of interpleader, etc.

10. When an executor presents a claim for additional compensation, the services performed should be particularly set forth for the information of the court, and to enable the heirs to decide whether they desire to contest the same, and no such claim should be allowed without such itemization.

11. The position of administrator or executor is an honorary one, and should be so regarded. Good business ability, rather than professional skill, is the element most needed in the administration of estates ; and compensation, save in the exceptional cases, should be adjusted upon the basis of the value of services among that class of persons, and if an attorney is selected he cannot expect to be allowed charges for services gauged by the prices of professional men.

Error to Wayne. (Speed, J.) Argued January 11 and 12, 1888. Decided May 18, 1888.

Appeal by executor and residuary legatee from allowance of executor's annual account. The residuary legatee brings error upon the judgment of the circuit court increasing the

allowance for extraordinary services, which judgment is reduced to the sum allowed by the probate court, and, as modified, affirmed. The facts are stated in the opinion.

*Moore & Moore* and *Henry M. Duffield*, for Catherine M. Speirs, appellant, contended:

1. The contestants have the right to have an executor's account passed upon by a jury; citing *Grovier v. Hall*, 23 Mich. 7.
2. It is the duty of an executor to point out each item of extraordinary service, and the value of it; citing *Wright v. Wilkerson*, 41 Ala. 267; *Pearson v. Darrington*, 32 Id. 273; *Campbell v. Crawford*, 63 Id. 393; *Wright v. Wright*, 64 Id. 88; *Price's Estate*, 81 Penn. St. 263; *Blake v. Pegram*, 109 Mass. 541.
3. The Supreme Court has a right to review the allowance made by the circuit judge on the ground of an abuse of discretion; citing cases cited in opinion.

*Henry C. Wisner* (*Otto Kirchner* and *Levi T. Griffin*, of counsel), for executor, contended:

1. The appeal is given by How. Stat. § 6779 (see *Goss v. Stone*, 63 Mich. 319), and was taken from the *entire* order, thus distinguishing this case from *Showers v. Morrill*, 41 Mich. 700.
2. The case was not triable by jury, as it involved only the question of extra compensation to an executor. *Gott v. Culp*, 45 Mich. 274.
3. The facts in the case were sufficient to call for the exercise of judicial discretion by the circuit court in passing upon the claim of the executor for extra compensation, and in such cases the circuit judge and not this Court must determine the question: *Mower's Appeal*, 48 Mich. 441.
4. No consolidation of the appeals, except by consent, could be effected: How. Stat. §§ 7375-7387.
5. As the question of compensation rested solely in the discretion of the probate and circuit judges, respectively, and not reviewable by this Court, the appellant was not entitled to any special findings, and was not prejudiced by the failure of the court to make the same: *Macomber v. Saxton*, 28 Mich. 516.

SHERWOOD, C. J. This case is an appeal from the allowance made to one of the executors for claimed extraordinary

services, involving unusual difficulty and responsibility, not required in the common course of duties in the settlement of an estate. The judge of probate allowed the executor for such services $1,544.31. On appeal taken by him to the Wayne circuit court, Judge Speed allowed the executor $6,500 for the same services. The widow of Mr. Mabley (now Mrs. Speirs), who is the residuary legatee as well as the devisee of a large share of the estate, appeals from the order made by the circuit judge to this Court, and asks for a review.

From the record it appears that Mr. Mabley died on June 29, 1885, leaving an estate which was appraised in the inventory at more than half a million dollars; and that a large portion of the property consisted of interests in firms, and a corporation in which the deceased had been a member and stockholder.

That in 1885 he made his last will, and therein he appointed Mr. Wisner, who had long been his legal adviser in Detroit, and Horace Kleinhans, of Louisville, Ky., his executors, and his wife executrix, of the will. It appears, however, that the principal management of the trust business devolved upon Mr. Wisner, and he became the managing executor.

On July 1, 1886, he filed an account with the estate in the probate court, setting forth his doings as executor up to that time, from which it appears that he received $334,069.13, and that his total expenditures, including his commissions of $3,455.69 on the amount collected, were $286,883.35; thus leaving a balance in his hands of $47,185.78. This account was allowed, as herein stated, by the judge of probate.

Mr. Wisner, in addition to the commissions so allowed by the judge of probate, presented at the same time an item or claim for extraordinary services in managing and conducting the business of the trust as such executor, to the amount of $6,544.31, and of which there was allowed to him the sum above stated. It is this item for extraordinary services which was disallowed by the judge of probate, and allowed

by the circuit judge, that is made the only subject of contest upon the merits before us.

Two reasons were given by the executor for his appeal from the order made by the judge of probate. They are as stated upon the record by him as follows:

" 1. That the said sum of $1,544.31 is not an adequate compensation for the extraordinary services performed by him as such executor, from July 1, 1885, to July 1, 1886, the period covered by said annual report and account, and not required of him in the common course of his duty as such executor.

" 2. That the evidence showed there was great and unusual difficulty and responsibility attending the care and management of said estate, requiring extraordinary services and expenditures of time during said period, and not required in the common course of his duty as executor; and that such extraordinary services were reasonably worth the sum claimed by him ($6,544.31), and that the refusal of said probate judge to allow the same was an injustice to said executor, and an abuse of legal discretion."

The appeal is "from the order or decree of the judge of probate."

Mrs. Speirs also appealed from the same order or decree, stating her reasons for appeal as follows:

" 1. The item, ' Sale of Ionia store, $7,824.09,' among the items of amounts received, should not have been allowed at that amount; that said executor should have been charged a sum in excess of that amount.

" 2. The item, ' Sale of Toledo store, $19,668.87,' amount received, should not have been allowed at that amount, but said executor should have been charged a sum largely in excess of said amount.

" 3. The item of disbursement, to wit, " Edward Kanter, surrender of Gratiot store lease, $3,000,' should not have been allowed.

" 4. The item, ' Commissions on amount collected and accounted for, $334,069.13, being $3,455.69,' should not have been allowed at that amount, but the sum to which said executor would be entitled is very much less than said amount.

" 5. The allowance of $1,544.31 for extraordinary services should not have been allowed."

For some reason the two appeals were treated for a long time as separate suits. There was not, nor could there be, any reasonable objection, when, as in this case, the trial is to be had without a jury, to consolidating the two appeals. They were both between the same parties; the plaintiff in one necessarily plaintiff in the other. They both included parts of the same account, which could only be settled and adjudicated in the same court, and, under the statute, could not be made the subject of cross-actions. The court should have ordered the two suits consolidated upon its own motion when the jury in Mrs. Speirs' appeal was waved. How. Stat. § 7395.

When the case was called in the circuit, counsel for the appellee, before proceeding to trial,—

"Moved to dismiss the case, on the grounds that the appeal is taken only from a portion of the order made in the probate court; that such appeal is not allowable, and gives the court no jurisdiction."

In this, counsel were mistaken. The appeal is from the order of the probate court generally. It does not purport to be from any particular part of the order, or from the decree made upon the allowance of any particular item, as was the case in *Showers v. Morrill*, 41 Mich. 700 (3 N. W. Rep. 193). The ruling upon this motion furnished no cause for complaint.

The two appeals were heard and decided at the same time; this case being numbered 24,996, and the appeal of Mrs. Speirs, 25,088.

A jury having been demanded in this case, after the disposition of the above-mentioned motions, the attorneys for the parties in both cases entered into the following stipulation:

"THE CIRCUIT COURT FOR THE COUNTY OF WAYNE.

"IN RE ESTATE OF CHRISTOPHER R. MABLEY, DECEASED.
*Appeal of Catherine M. Speirs.* } No. 25,088.

"This cause being called, the appellant insisted upon the

right to try all the items by jury, and the court decided that the appellant was not entitled to a trial by jury upon the question of the amount of extraordinary compensation, nor upon the question of commission, being the items mentioned in the fourth and fifth paragraphs in the appellant's claim of appeal. Thereupon the appellant excepts to the ruling of the court, and waives a jury as to all the other items involved in the appeal.

"It is further stipulated and agreed that all the testimony heretofore taken *In re Appeal of Henry C. Wisner,* file No. 24,996, be taken and considered as if the same had been taken in this case, together with the testimony of Messrs. Graham and Mockett, taken on July 7, 1887, before Fred Irland, a notary public, and one of the official stenographers of this court, and that the case be submitted without further argument.

"It is also stipulated and agreed that Exhibit A, hereunto annexed, is a full and correct statement of counsel made in open court."

The exhibit referred to was a discussion between counsel and court as to the right to a trial by jury in the case, which it was claimed contained a waiver of a jury.

The jury seems to have been denied to the appellant upon the ground that the items in dispute were claims resting entirely within the discretion of the court to allow or disallow, and therefore such as the jury could not be permitted to pass upon. It was decided in *Mower's Appeal* that a claim resting in such discretion must be passed upon by the court, and does not raise a question proper to be submitted to the jury. The jury was waived by the stipulation as to all other items.

There was no error in the ruling denying the motion for a jury. In this class of cases, in all matters where the executor or administrator is required by the statute to use his discretion as to what he shall do, the question is not one for the jury, nor is the discretionary power of the court to be exercised, to be passed upon by them. *Showers v. Morrill,* 41 Mich. 700 (3 N. W. Rep. 193); *Gott v. Culp,* 45 Id. 274 (7

N. W. Rep. 767); *Mower's Appeal,* 48 Id. 441 (12 N. W. Rep. 646); *Higbie v. Westlake,* 14 N. Y. 281; *Willard v. Bassett,* 27 Ill. 38.

The record contains a bill of exceptions, and six findings by the circuit judge of what he calls "extraordinary services of the executor." The substance of these findings is as follows:

1. That the entire administration of said estate was assumed and performed by Mr. Wisner; that the other executors only concurred in his plans, and in the result of his labors.

2. That the administration of the estate was of unusual difficulty and responsibility, and that Mr. Wisner performed, as executor, extraordinary services, not required of an executor in the common course of his duty, and for which he should be allowed extra compensation beyond that provided by statute; that most of such services were rendered by him "in his general care of said estate," on behalf of all the interests as an entirety; "that no part of said services was rendered with reference solely to any one of said interests separate and distinct from the rest."

3. That the estate was of the value of $580,000 and over, and consisted of a skating-rink in Toledo, Ohio, which cost about $8,000; the interest of deceased in the corporation of Mabley & Co. at Detroit, value $208,000; the interest of the deceased in the firm of Mabley & Carew at Cincinnati, of the value of $250,000; the interest of the deceased in the firm of C. R. Mabley & Co. at Toledo, value $20,000; and also of a stock of clothing in the house of C. R. Mabley at Ionia, valued at $10,000; that the assets of said corporation and of the firms consisted wholly of stocks of clothing, dry goods, furnishing goods, boots and shoes, hats and caps, used in retail trade, and the store fixtures.

4. That Mr. Wisner acquainted himself with the interests and property belonging to the estate, and the business methods of the firm and corporation in this State, and that he exercised a painstaking supervision over each interest, and in so doing spent eight months of his time during the first year, and no more than was necessary.

5. That the said Wisner did, in his general care and management of said estate, perform extraordinary services as such executor, and not required of him in the common course of

his duty as such, regarding the matter specified in the request of appellant for a finding of facts separately and specially, designated as follows:

"*a*—In that he especially negotiated a sale of the interests of the estate in the said Toledo and Ionia houses, by which he succeeded in obtaining high prices therefor, in cash, and I find that such services were attended with unusual difficulty and responsibility.

"*b*—In that he especially negotiated a sale of the entire interest of the estate of Mabley in the corporation of Mabley & Co. in May, 1886, for cash, or its equivalent, at its full par value of $208,000 ; that he was compelled to go and did go to the city of New York to obtain the co-operation of his co-executors therein, and that the perfecting and closing of said sale was attended with unusual difficulty, annoyance, and responsibility.

"*c*—That the capital stock of the corporation of Mabley & Co. was $250,000, of which said estate owned $208,000, and that, for the proper protection of that interest, it was necessary for the said Wisner to become, and he did become, one of the board of directors of said company, and as such well and faithfully performed his duty, under its charter and by-laws, from July 29, 1885, to May 6, 1886, in the interests of said estate ; that, in so doing, it was necessary for him to, and he did, familiarize himself with the entire business of said corporation in its daily detail, including its system of book-keeping and accounts. I find that such services were extraordinary services, and were attended with unusual difficulties and responsibilities.

"*d*—The said testator in his life-time, having executed with Edward Kanter, of Detroit, two leases of store property on Gratiot avenue at a monthly rental of $167.50, and greatly above its true rental value, and for which subtenants could not be found, and running to December 15, 1888, the said Wisner, in November, 1885, successfully negotiated a surrender of said leases to said Edward Kanter at a saving to the estate of $4,000 and upwards.

"*e*—That said testator in his life-time having executed two leases with parties in Ionia, Mich., of store property at a monthly rental of $116.66, much greater than the fair rental value thereof, and for which subtenants could not be found, and running until March, 1889, the said Wisner, in April, 1886, successfully negotiated a surrender of said leases, at a saving to said estate of $3,000 and upwards.

"*f*—That the executor saved the estate from the liability on indorsed paper in the state of New York, to the amount of $9,000, by having the holders secured out of the assets of the insolvent estate of the makers.

"*g*—That the executor was called upon for a contribution of money to aid in perfecting title to 50,000 acres of land which the estate held, in company with others, on tax title, in Missouri, and that he made

such investigations in the matter as enabled him to act most beneficially for the estate.

"*h*—That the executor ran the skating-rink at Toledo, under his own management, several weeks for the purpose of putting the property in salable condition, but that in this he failed.

"*i*—That the executor, at the request of the widow, made inquiry into the facts of the loss of a watch by the testator, presented to him by the merchants of Rochester, N. Y., and obtained information which enabled him to act in the matter for the best interests of the family and the estate.

"*j*—That Mr. Wisner appeared before the commissioners on claims, and acted for the estate as attorney, without assistance, in defending and defeating claims, and that such service was necessary.

"*k*—That he was frequently called by the widow to her house to consult on matters pertaining to the estate, and went in his own conveyance, and spent from 2 to 4 hours at a time explaining matters to her.

"*l*—That he went immediately after the funeral, at her request, to read and explain the will to her before the family and friends; that he prepared the bond after obtaining probate of the will, got the names of the other executors to it, and afterwards procured an acceptable surety to it, and filed it with the court.

"*m*—That the executor, during the first year, received and replied to upwards of one hundred communications in writing relating to the estate.

"*n*—That the executor made the inventory without assistance from his co-executors, and spent considerable time in gathering in the evidences of property belonging to the estate, and visited the widow to get her signature to it at her house when completed, and explained it to her."

"6. And I do not find that the said extraordinary services of the said Henry C. Wisner, as executor as hereinbefore mentioned, were not required in the common course of his duty; and the unusual difficulty and responsibility in and about the management of said estate, and the disposition thereof, were reasonably worth the sum of $6,500."

All the testimony taken in the case appears in the record, and by it it appears that the foregoing findings embrace about all the services of the executor rendered for the estate.

It is claimed on the part of the appellant, first, the court admitted improper testimony. While on appeal to the circuit court, in this class of cases, the proceeding is to be dealt with as an equitable rather than as a legal proceeding,

yet, in proving the administrator's account, incompetent, illegal, and improper evidence should be rejected on both sides; and, if such testimony is admitted for the purpose of establishing any items which are of a character to prejudice the result and work an injury to the party complaining, the order or judgment based thereon will be set aside, and a new trial granted, unless the proper remedy can in some way be applied by this Court without such retrial, and it will make no difference whether there is a jury in the case or not.

On the administration accounting proper, when contested, the parties have a right to have the issue tried by jury (*Grovier v. Hall*, 23 Mich. 7), and to have the proper issue made up for that purpose, if desired, in the circuit.

As the case comes before us upon this record, we do not feel at liberty to examine into the testimony further than to ascertain whether the character of the services rendered, or any portion thereof, were such as might properly be termed "extraordinary services, not required of an executor in the common course of his duty," and which were properly rendered in the faithful and reasonable discharge of the trust. For this purpose we may examine all the testimony relating to all the items of service contained in the report, and the account of the executor passed upon by the circuit judge, to see to what extent his findings are supported. In the present case the executor can ascertain very easily from the will what disposition is to be made of the estate, when settled, and, to a certain extent, his duties in the progress of the settlement of the estate are outlined therein. In this respect, the duties frequently in the case of an executor differ from those of an administrator.

The appellant's counsel, in making request for special findings, asked the court to state what sum he allowed for the extraordinary service stated in each finding. This the circuit judge failed to do, but this does not necessarily embarrass the consideration of the question raised. If, under such

circumstances, the extra allowance is for any services not included in those mentioned in the statute which may be thus compensated, an error will have been committed which cannot be corrected except by sending the case back for a new trial, or by reducing the amount allowed by the circuit judge to that allowed by the judge of probate, and, thus modified, affirming the judgment at the circuit.

In this case a careful inspection of the record shows to us very plainly that there was a large amount of testimony received, bearing upon the question of services and compensation, which should have been rejected, and it is impossible to tell to what extent it may have influenced the judgment of the circuit court in fixing the amount of discretionary compensation he did. While the amount is left to his discretion, that discretion is a legal one, and must be based on the legal testimony before him; and from what appears in the record we cannot say this was done, but, on the contrary, from what does appear, the presumptions are largely the other way.

The deceased made his wife testamentary guardian for his children during their minority, and provided a home and liberal support for his family when he should leave them. The record shows the estate was, taken as a whole, in good shape when the testator left it, and it went into the hands of his executors; and that the provisions of the will are, in the main, plain and simple; requiring no great amount of legal learning, but good business ability, to execute them. There is nothing in the will containing any instructions to either of his executors to look after the social standing or domestic relations of the widow or the family, or the disposition she may see fit to make of her property when it comes into her possession. And all testimony relating to those subjects, and the difficulties encountered by the executor presenting the account, arising therefrom, and embarrassing him in the discharge of his trust duties, was improperly received, as also was all testimony relating to the custody and guardianship of

the children, and services rendered for them or the widow by the executor; and these seem to have entered largely into the extra services claimed for.

The findings as to the extra services performed by the executor relating to the Toledo and Cincinnati properties we do not think fully supported by the evidence. We do not think the testimony shows, or tends to show, any very unusual difficulty, annoyance, or responsibility, while they were of the character of extraordinary services; and there is no question, we think, but that those entered largely in the sum fixed for the such claimed service. Other instances might be mentioned showing that the findings upon this subject are not supported by testimony, but these are quite sufficient.

In speaking of the English rule, which allowed no compensation, it was pertinently said by Justice Story that—

"Trusts may be very properly considered as matters of honor and kindness, and of a conscientious desire to fulfill the wishes and objects of friends and relatives. But the duties and responsibilities of a trustee are sufficiently onerous and perplexing in themselves, and mistakes, even of the most innocent nature, are sometimes visited with severe consequences. Nor can one reasonably expect any trustee to devote his time or services to a very watchful care of the interests of others when there is no remuneration for his services, and there must often be a positive loss to himself in withdrawing from his own concerns some of his own valuable time. To say that no one is obliged to take upon himself the duty of a trustee is to evade, and not to answer, the objection. The policy of the law ought to be such as to induce honorable men, without sacrifice of their private interests, to accept the office, and to take away the temptation to abuse the trust for mere selfish purposes as the only indemnity for services of an important and anxious nature."

How. Stat. § 5958, provides that the executor shall be allowed all necessary expenses in the care, management, and settlement of the estate, and for his services such fees as the law provides, together with all extra expenses. For actual

services, section 9015, How. Stat., provides that he shall receive one dollar per day, and his expenses and disbursements, but, in cases of unusual difficulty or responsibility, such further sum as the court may deem reasonable and just. In addition to the foregoing allowances, the statute gives to the executor the commissions provided for in section 5959 upon the personal estate collected and accounted for by him, and the proceeds of real estate sold, under the order of the court, to pay debts. This clause is undoubtedly intended as compensation for the responsibility of collecting, keeping, or disbursing the moneys of the estate, and this section further provides that,—

"For any extraordinary services, not required of an executor or administrator in the common course of his duty,"—

The court may make such further allowance as he may deem just and reasonable. This last clause was intended to cover a class of services not included in either of the other sections; such, for instance, as securing property belonging to the estate and in use by copartners, or located in another state or county, suits to set aside fraudulent conveyances, garnishee proceedings, and securing the rights of the estate by bill of interpleader, etc.; and other instances might be mentioned of such services, which will readily occur to practitioner and court. The executor or administrator, in all cases when the compensation is not provided for in the will, is entitled—

1. To his fees *per diem* for his actual service.

2. His necessary expenses and disbursements in the care and management and settlement of the estate.

3. His commissions.

His additional compensation, if any, is within the discretionary power of the court to allow; and, when claim is made therefor, the services for which it is made should be

stated and particularly set forth by the executor, in order that the court may know precisely for what services extra compensation is asked, and that the heir may be informed, so as to know what items he may desire to contest; and no such account for extra service should be allowed without such statement is furnished by the executors or administrator of such service.

The statute having fixed the compensation of an executor at a very moderate sum except in unusual cases, it very clearly appears that the position should never be sought or given with a desire to make money or profit. The position is an honorary one, and should be so regarded. Good business ability, rather than professional skill, is the element most needed in the administration of estates; and compensation, save in the exceptional cases, should be adjusted by the value of services among that class. If an attorney is selected, he cannot expect that he will be allowed charges for services in the discharge of his trust duties, gauged by the prices of professional men. This he knows, or should know, when he accepts the trust; and if not content with such compensation as the statute gives, or the court may reasonably allow, for discharging the duties of the trust requested by his friend, he should decline, and allow another to take the place.

The other points made by counsel for the appellant have been mostly considered in what has been already said.

In regard to the point that Mr. Wisner is not entitled to all the commissions, this is a matter hardly proper for adjudication in this case, but relates more particularly to the adjustment of the accounts of the executors among themselves. I have no doubt, however, that for all the services which the executor presenting the account did perform, by permission of the others, and for such moneys as he received and disbursed, he would be entitled to the statutory allowance, and to such extra pay as the court should properly

allow him.    This point, however, is not decided in this expression of my individual opinion.

We have no hesitancy in saying, upon this record as it stands, the amount allowed by the court for extraordinary and unusual services is in excess of a proper discretion of the court in the premises.

We do not regard it necessary to send the case back for a retrial, as all the services appear to have been included in the testimony given, and their nature, character, and extent fully appear.    We think the account allowed by the judge of probate was reasonable under all the circumstances.    The order made by the circuit court will therefore be reversed, and that of the probate court affirmed; and it must be certified to those courts accordingly.

CAMPBELL and LONG, JJ., concurred with SHERWOOD, C. J.    CHAMPLIN, J., concurred in the result.    MORSE, J., did not sit.