CATHERINE M. SPEIRS v. EPHRAIM K. ROBERTS ET AL.

*Will—Construction.*

A provision in a will directing the payment to the widow, as guardian of the testator's minor children, of a designated fund, to be used by her, in connection with her own means, in paying the expense of maintaining the household, and supporting and educating the children in such manner as she shall deem best, with no obligation on her to at any time account therefor to any one, amounts to an absolute gift to her of the fund.

Appeal from Wayne. (Brevoort, J.) Argued January 17, 1889. Decided February 8, 1889.

Bill by residuary legatee to compel guardian of minor heirs to indorse to her a certificate of deposit. Defendants appeal. Affirmed. The facts are stated in the opinion.

*Moore & Moore,* for complainant, contended:

1. The money belongs to Mrs Speirs; citing *Jones v. Jones,* 25 Mich. 401; *Proctor v. Robinson,* 35 Id. 234; *Hogan v. Hogan,* 44 Id. 147; *Norris v. Harris,* 15 Cal. 226; *Davis v. Mailey,* 134 Mass. 588; *Dutch Church v. Smock,* 1 N. J. Eq. 148; *Kendall v. Kendall,* 36 Id. 91; *Wead v. Gray,* 78 Mo. 59.

2. As between the estate and Mrs. Speirs, the money should be paid to her; citing *Hamley v. Gilbert,* Jac. 354; *Thurston v. Essington,* Id. 362; *Hammond v. Neame,* 1 Swanst. 35; *Robinson v. Tickell,* 8 Ves. 142.

*W. L. Carpenter (A. F. Wilcox,* of counsel), for defendants, contended:

1. The fund in controversy is not by the terms of the will the absolute property of complainant. She takes the property charged with the duty of maintaining the household, and of supporting and educating the children.

2. Summary of legal principles declared in adjudicated cases:
    *a*—When a fund or an income is given to a parent to be used

in supporting, maintaining, or educating a child, it is a trust fund.

*b*—Where the whole fund devised is required for trust purposes, then the whole is a trust fund; citing *Leach v. Leach,* 13 Sim. 304; *Wetherell v. Wilson,* 1 Keen, 80.

*c*—If the fund is more than sufficient for the performance of the trust, the surplus need not be accounted for, and may be retained by the devisee; citing *Browne v. Paull,* 1 Sim. (N. S.) 101; *Hadow v. Hadow,* 9 Sim. 438; *Bowden v. Laing,* 14 Id. 113.

*d*—The fact that the devisee is expressly exempted from accounting does not release her from the performance of her trust; citing *Biddle's Appeal,* 80 Penn. St. 258; *Hamley v. Gilbert,* Jac. 354.

*e*—The fact that a discretion is given the trustee as to the amount and method of applying the trust fund does not excuse the trustee from making a proper application of it; citing *Colton v. Colton,* 127 U. S. 300; *Chase v. Chase,* 2 Allen, 101; *Hart v. Tribe,* 18 Beav. 215; *Browne v. Paull,* 1 Sim. (N. S.) 101; *Raikes v. Ward,* 1 Hare, 445; *Longmore v. Elonm,* 2 Younge & C. Ch. 363; *Sheppard v. Wilson,* 4 Hare, 395.

*f*—While the trustee will ordinarily be permitted to receive the trust fund, and perform the trust according to the terms of its creation, yet if she has become incapable of performing it, or refuses to perform, before becoming possessed of the trust fund, the court will not permit her to receive it; citing *Castle v. Castle,* 1 DeG. & J. 352; *Chase v Chase,* 2 Allen, 101.

LONG, J. We take the following statement of facts from the brief of counsel for defendants:

This is a controversy over a fund of $26,559.09, between the widow and infant children of Christopher R. Mabley, deceased. Mr. Mabley died testate, June 30, 1885. By his will he bequeathed to his wife $75,000 in money; to his daughter Katharine, $50,000 in money; to his daughter May, $40,000 in money; and to each of the infant defendants, $37,500 in money. He also devised to his wife his homestead on the corner of Woodward and Holden avenues, Detroit, and $25,000 of government bonds; and to the four infant children he gave

$50,000 of government bonds, to be divided equally
between them.

Mr. Mabley's property consisted largely of mercantile
investments in Detroit and Cincinnati; and he provided
in his will as follows:

"11. During the delay, if any there shall be, in the
payment of said legacies by reason of my executors not
yet deeming it proper to dispose of my interests in the
Detroit and Cincinnati houses, it is my wish that the
income received from those houses, or so · much as is
available, shall be paid to my wife and children as soon
as practicable after the same is received, in shares pro-
portionate to the money legacies given to them, and as
income and accumulation thereon.

"12. I hereby appoint my wife, Catherine Mabley,
guardian of each of my minor children during the minor-
ity of each child, and it is my wish that as such guard-
ian she shall not be required to give bond or security
for the performance of such trust. It is my wish also
that all or any of my children so desiring shall at all
times have a home with my said wife, and as long as
they shall choose to remain. And the moneys paid from
the incomes of the Detroit and Cincinnati houses, as
provided for in the preceding paragraph, upon the lega-
cies of said children, except my daughters Kate and May,
and any child which has arrived at maturity, shall be
paid my said wife as their guardian, to be used by her,.
in connection with her own means, in paying the expense
of maintaining the household, and in supporting and
educating said children in such manner as she shall
determine best, with no obligation on her to at any time
account therefor to any one."

The fund in controversy in this suit is that portion of
the dividends of the Detroit house declared February 15,
1886, which, by virtue of paragraph 11, above quoted, is
payable on the legacies of the infant defendants; and the
question involved here is to whom that fund belongs,
under the following circumstances:

At the time of Mr. Mabley's death, his widow, the
complainant in this suit, her daughter Katharine, and the

infant defendants, aged respectively 14, 11, 9, and 6 years, were residing at the family homestead in Detroit. They remained there about two or three weeks, and then they all went to Petoskey, and remained until about the 1st of September. Then they returned to their home in Detroit, and remained about four weeks. Then complainant and her eldest daughter, Katharine and her infant son, Ray, one of the defendants in this suit, went to New York, and remained two weeks; the other children, Maud, Alice, and Edah, remaining at home. They then returned home, and remained together until about the middle of November, when the two girls Alice and Edah went to New York to school. Maud Mabley went to California with her elder sister, Katharine, on November 13, 1885, and did not see her mother, the complainant, again, until after June 16 of the following year; and during this time Maud's expenses were paid by her sister. December 17, 1885, the complainant broke up housekeeping in Detroit, and removed to New York. She has not been in Detroit since, except on occasions when she was visiting. Complainant says that she and her family resided together at the family homestead after her husband's death, in all about six or seven weeks, and she sold this homestead July 15, 1886, for $42,500.

On January 18, 1886, complainant was married to William J. Speirs. Mr. Speirs was a minister of the gospel, and somewhere about 27 or 30 years of age. He possessed very little property. Since his marriage he has resided with complainant and her children, and it appears has been supported from her means. The fact of this marriage was not disclosed by complainant to her children, or to Mr. Wisner, her co-executor, until some months after it had occurred. When she told Mr. Wisner of her marriage, she also told him that her health

was such that she could not do any business herself, and that Mr. Speirs therefore would attend to all her business for her, as she had turned all her matters over to him. The marriage of complainant brought about an estrangement between herself and her adult daughters, and on July 23, 1886, a petition was filed by them for her removal as guardian of the infant defendants, on the ground that there was danger of her wasting the estate of her wards. Complainant answered this petition; a hearing was had thereon, and the probate court made an order removing her as guardian, and subsequently appointed defendant Roberts in her stead. During the interval in which complainant has resided in New York, she resided at the Buckingham Hotel, until March, 1886; at the Victoria Hotel from March, 1886, until the fall of 1886; and since that time at 210 West Fifty-seventh street, in a private residence.

The only demand that complainant appears ever to have made of the executors for the fund in controversy was under a claim—

"That she had been advised that that money, under the will, belonged to her; that she was entitled to have it, and use it as she saw fit."

After the appointment of defendant Roberts as guardian, to facilitate the settlement of the estate of Mr. Mabley, defendant Roberts and complainant jointly receipted for this fund, and deposited the same in the Citizens' Savings Bank, and received therefor a certificate of deposit, payable to their joint order, under an arrangement whereby it was to be paid to the one adjudged entitled thereto.

On the same day that this bill was filed complainant filed a petition in the matter of the estate of the infant defendants in the probate court for the county of Wayne,

praying that defendant Roberts be compelled to repay her the money she had advanced for supporting said infant defendants from February 15, 1886, to December 31, 1887, and that he be compelled to pay her a monthly allowance thereafter. Said petition was duly set for hearing, and citation served upon defendant Roberts, and a hearing had upon testimony taken by deposition. Upon that hearing the court ordered said defendant Roberts to repay complainant the amount she had advanced for the infant defendants from July 29, 1886, which amounts for the respective children are as follows: For Maud H., $2,223.94; for Edah F., $1,955; for Alice B., $1,675.50; and for C. Ray, $969. And he further ordered that complainant be allowed for the support of said minors from and after January 1, 1888, a monthly allowance payable in advance, as follows: For Maud H., $125; for Edah F., $100; for Alice B., $80; and for C. Ray, $50. And said order was so drawn as not to prejudice the rights of complainant to apply for repayment of the amount advanced prior to July 29, 1886. The payments so ordered have been made.

| | |
|---|---:|
| Complainant received from the estate of Mr. Mabley, cash | $75,000 |
| $25,000 of bonds, worth 29 per cent. premium | 32,500 |
| The house and accompaniments | 65,000 |
| Total | $172,500 |
| As residuary legatee she has received cash, $132,668.64 —$107,500 | $25,168 64 |
| Note | 4,500 00 |
| Springwells real estate | 1,000 00 |
| Upper Peninsula farms | 2,000 00 |
| Miscellaneous | 800 00 |
| | $172,500 00 |
| Making | $205,968 64 |
| In addition to this she has received life insurance | 22,000 00 |
| Making in all | $227,968 64 |

In addition to this she will receive a residuum the exact amount of which cannot be stated. There is included in this amount a monthly allowance of $1,250 for the support of complainant and her family, which was paid her from the date of Mr. Mabley's death to August 1, 1886. There was also included in this the earnings of the Cincinnati house, amounting to $30,000, which never was declared as a dividend.

The complainant claims that by reason of the foregoing facts, the fund in controversy here is her individual property, and she seeks to sustain a decree of the court below to compel defendant Roberts to indorse to her the certificate of deposit before mentioned.

It is contended by defendants' counsel—

1. That the fund in controversy is not by the terms of the will the absolute property of the complainant; that she takes the property charged with the duty of maintaining the household, and of supporting and educating the children.

2. That complainant is disqualified to perform this trust.

3. That complainant cannot prevail, as she has no absolute title to the fund by the terms of the will.

On the other hand, it is contended by complainant's solicitors—

1. That all this money is not income money, and the portion that is not belongs to complainant.

2. That the title to the entire fund vests in complainant.

3. As between the estate and complainant the money should be paid to complainant.

4. That complainant has maintained, supported, and educated her children from the time of their father's death to the present time, and she is still supporting them. If, therefore, there in a trust in favor of the children, it has been fully performed.

5. That the claims made by the defendants do not affect the complainant's rights to the *possession* of the fund.

We need not discuss these questions at length, as we are satisfied that under the terms of the will the complainant is entitled to this fund.    The will provides:

"This money shall be paid to my said wife as their guardian, to be used by her, in connection with her own means, in paying the expense of maintaining the household, and in supporting and educating the children in such manner as she shall deem best, with no obligation on her to at any time account therefor to any one."

The only question involved is, to whom shall the estate pay this money?   She was, by the terms of the will, to receive it, and use it in connection with her own means, and was not to account for it.   A duty was cast upon her of maintaining a household, and of supporting and educating the minor children, but this was to be done as she deemed best, and with no obligation to account to any one.   No more absolute gift of money can be conceived.   She was to care for and support and educate these minors as their mother, and it is evident that the deceased had confidence that she would faithfully perform this trust.   He provided liberally for her, and directed that this special fund should be paid to her in addition, to be used with her own means for such purposes. She is a suitable and competent person to have the care of her own children.   Even if it was held a trust fund, and could only be held and used by her for the purposes of the trust, yet, under the facts shown here, she would be entitled to have possession of the fund, as by the terms of the will she is the person appointed to receive and disburse it, and no reason is shown to exist why it should not be paid over to her by the estate.   It is, however, an absolute gift.   The will confers upon complainant, not only the right to the possession, but also the right to use and dispose of it without any liability to account.   This clearly is an absolute gift of the fund.

The court below made a decree directing Ephraim K. Roberts, guardian of the estate of said minors, to indorse the certificate of deposit to complainant, and deliver the same to her. From this decree the defendants appeal.

This decree must be affirmed, with costs.

The other Justices concurred.