| 74 | 143 |
|----|-----|
| 88 | 615 |

74  143
113  608

HENRY C. WISNER v. THE ESTATE OF CHRISTOPHER R.
MABLEY, DECEASED.

[See 69 Mich. 307; 70 Id. 271; 73 Id. 666.]

*Executors and administrators—Fees—Extraordinary services—Payment of claim allowed—Appeal.*

1. The following services performed by an executor, who was an attorney at law, are held to be *extraordinary:*

    *a*—Resisting claims against the estate in probate court, one of which was finally compromised at a large discount from its face.

    *b*—Drafting a bill to construe a provision in the will, and making copies.

    *c*—Appearing in probate court, and resisting the petition of the guardian that the executors be compelled to pay over to him the income of his ward's estate in their hands.

    *d*—Going out of the State to settle a partnership business in which the testator was engaged, and the contract relations between the estate and the surviving partner.

    *e*—Selling property in another state.

2. The following services are held *not* to have been extraordinary:

    *a*—Negotiating sale of notes, indorsed without recourse to the estate, at a discount of one per cent.; the object being to effect an earlier settlement of the estate.

    *b*—Prevailing upon the widow and guardian to consent that a certain sum in dispute between them might be deposited to their joint account to await the result of pending litigation between them, and preparing the necessary agreement.

3. The finding of the probate court as to what is a reasonable compensation for extraordinary services rendered by an executor is open to review in the Supreme Court.

4. An executor who pays a claim allowed against the estate for moneys expended in the support and education of the minor children of the testator, at the request of the mother, and which should have been paid from the statutory allowance allowed her for that purpose, as claimed, before the expiration of the time allowed for an appeal, and without the consent of the mother, who is executrix with him, and also residuary legatee, does so at his peril, and a claim for the money so

paid included in his account is properly rejected pending an appeal taken by said legatee.

Error to Wayne. (Gartner, J.) Argued January 23, 1889. Decided February 15, 1889.

Plaintiff, as executor, appealed to the circuit court from the allowance of his account by the probate court, and the residuary legatee brings error on the findings and allowance of the circuit court. Order of probate court affirmed, and finding of circuit court vacated.

*Moore & Moore,* for appellant.

*Edwin F. Conely,* for plaintiff.

MORSE, J. Christopher R. Mabley died June 30, 1885. By his will, Catherine Mabley (now Mrs. Speirs), Horace Kleinhans, and Henry C. Wisner were appointed as his executors, and qualified, and have acted as such.

Mr. Wisner presented his first account as executor, which embraced a period terminating July 1, 1886. The dispute in relation to this account was settled by this Court in *Wisner v. Mabley's Estate,* 70 Mich. 271 (38 N. W. Rep. 262).

June 25, 1887, the said Wisner filed his second account in the probate court for Wayne county. Before doing this he turned over to the residuary legatee, Mrs. Speirs, all of the estate of the deceased, except the balance of money on hand, which amounted to about $40,000, after deducting his claim for commissions. The judge of probate allowed his account May 23, 1888, except the items charged by the executors for services, which he allowed as follows: For commissions, $3,078.86; for extraordinary services, $2,000. An item charged as "paid Kate Mabley, upon order of probate court," amounting to $1,095.67, and from which order an appeal had been

taken, and not yet determined, was "for the present disallowed." From this allowance Henry C. Wisner appealed to the circuit court for Wayne county. The appellant filed a statement of the items for which he claimed pay under the head of extraordinary services:

1. Mabley, in his life-time, was an equal partner in the house of Mabley & Carew, carrying on a retail business in hats and caps, boots and shoes, gents' furnishing goods, ready-made and custom-made clothing in the cities of Cincinnati and Baltimore. By their articles of copartnership, when one should die, it was provided that the other partner should continue the business for one year. Then he should purchase the interest of the deceased partner at the following prices: All stock at cost price; all fixtures, etc., at the value put upon them at the last preceding inventory; and all real estate at a valuation to be agreed upon,—and pay for the same with his promissory notes, bearing 6 per cent. interest, one-sixth in 3 months, one-sixth in 6 months, one-sixth in 9 months, one-sixth in 12 months, one-sixth in 15 months, one-sixth in 18 months. Mr. Wisner claims that June 26, 1886, he met Mr. Kleinhans and Bruce Goodfellow, who represented Mrs. Speirs, at Cincinnati, and performed extraordinary services there in closing up this business, for which he charged the estate $3,500.

2. He went into the probate court, and resisted two claims, and finally compromised the claim of Mr. Page of Ionia, and settled with him for $1,200. The claim was $2,952.40,—a saving to the estate of $1,752.40. Charge, $100.

3. He appeared in same court to resist the payment of income from the children's estate to their guardian, who petitioned for such payment. Charge, $50.

4. Services in determining by bill in equity the amount of bonds that should be purchased under the ninth paragraph of Mabley's will. Charge, $300.

5. Selling Toledo rink property for $1,500 cash,—a clear saving, as he claims, of that amount to the estate. Charge, $200.

6. Prevailing upon guardian and widow to sign an agreement, and preparing same, that $26,459.09 in dis-

pute between them might be deposited to their joint account. Charge, $100.

7. Negotiating sale of three Carew notes, each for $44,945.51, at M. & M. National Bank of Detroit, indorsing the notes without recourse to the estate, at a discount of 1 per cent., June 4, 1887. Charge, $1,400.

8. Getting agreement with widow and bank, under which the bank purchased 75 $1,000 bonds, and was to hold 50 of the same until a suit in equity was determined, turning $25,000 of them over to widow. Charge, $200.

9. Answering letters, and time spent in law-office for the estate, $100.

The appeal was tried before Judge George Gartner, who, in his findings, allowed to Mr. Wisner the payment to Kate Mabley of $1,095.67, and—

| | |
|---|---:|
| 1. For services in the Mabley & Carew matter | $3,500 |
| 2. For services on claims of Page and others | 100 |
| 3. On income matter | 50 |
| 4. Filing bill in equity as to bonds | 100 |
| 5. Selling rink at Toledo | 200 |
| 6. In relation to the $26,459.09 | 100 |
| 7. Negotiating Carew notes | 1,400 |
| 8. and 9. Not allowed. | |
| Total | $5,450 |

For extraordinary services, which he found in each item, as above stated, to be a reasonable charge for such services. The estate brings the case here by the appeal of Mrs. Speirs upon writ of error, alleging:

1. That the Kate Mabley payment was improperly allowed.

2. The executors are not entitled to the $3,078.86 as commissions.

3. The $3,500 allowed, over and above the commission fixed by statute, for services at Cincinnati, is excessive.

4. The charge of $1,400, for negotiating the discount of the Carew notes, is not for extraordinary services.

5. The charges for settlement of the Page claim, and the sale of the Toledo rink, should not have been allowed, nor the other smaller items.

We think the circuit court was right in allowing the commissions at $3,078.86, and the estate did not appeal from the decision of the probate court in this respect. The court was also correct in allowing for the settlement of the Page claim, and resisting others, and the amount allowed—$100—was reasonable; also in allowing Mr. Wisner $100 for filing bill in equity to determine dispute as to bonds. See *Wisner v. Kleinhans,* 69 Mich. 307 (37 N. W. Rep. 290). The work of drafting the bill of complaint in that case, and making copies, was not within his ordinary duties as executor, and the charge was reasonable. The third item, for appearing and resisting the guardian's petition in the probate court that the executors be compelled to pay over to him the income of the children's estate in their hands, which petition was denied, was properly allowed at $50.

We will now examine the first item in Mr. Wisner's account. It cannot be denied that the going out of the State to settle up the business and the contract relations between the estate and Carew was not within the ordinary duties of an executor; and it must be considered in the outset that Mr. Wisner was entitled to some compensation over and above the commissions for his services. It is claimed that the allowance of $3,500, under the proofs, is excessive, and that the same is not a reasonable charge for the services rendered. We are satisfied that this claim of the estate is correct. Mr. Wisner's own showing is that he went to Cincinnati June 26, 1886, and arrived there on the following morning (Sunday); went at once to work; made a regular inventory of all the stock. Wisner's part in such inventory was counting the goods —boots and shoes—on three floors. They were three days taking the inventory. On the night of June 30 he went to Baltimore, reaching that city on the morning of July 1; took an inventory of the goods there. At Baltimore

Mrs. Speirs met them, and Mr. Wisner went to a hotel, and explained the matter in detail to her. From Baltimore he went to New York city. He reached home—Detroit—on July 8. On that day and the next he was busy with Mr. Carew in drawing notes, and perfecting the transfer. The property at Cincinnati amounted in the total to $412,140.10, of which $46,539.12 was for fixtures; $64,500 real estate; $8,450.19 book-accounts; $35,500 bills receivable; the balance was merchandise, excepting two small items amounting to $14.63.

Besides the taking of the inventories while Mr. Wisner was at Cincinnati, he went round the city, and ascertained the value of the real estate. Mr. Carew claimed it to be worth $59,000. It cost the firm $57,000. By Mr. Wisner's labor and efforts, it is claimed, the value was finally fixed at $64,500, a gain to the estate of one-half of $5,500. By his investigation and persistence it is also contended that he saved to the estate one-half of the sum of $26,539.12 upon the item of fixtures. He gave to the estate, outside of his own city, his time and services from June 26 to July 7, both days included, making a total of 12 days. For these 12 days he charges $3,500, or nearly $300 per day, including two Sundays. We consider $100 per day a most munificent price for his time and labor.

But it is insisted that, when it is found that the services rendered were in the nature of extraordinary services, this Court cannot interfere with the finding of the court below as to what was a reasonable compensation therefor. This is not so, and, besides, there was no competent evidence in the case upon which to base such finding. There is no testimony in the record before us that would warrant any court in finding that these services were reasonably worth the sum of $3,500. There was nothing in the character of the services performed which was

extraordinary in any sense, except the mere fact that it took Mr. Wisner away from his home and business, and outside of the State. The nature and character of the business being carried on by Mr. Mabley at his death, and which must be settled up by the executor under his will, was known and understood by Mr. Wisner when he accepted the trust imposed upon him. The taking of inventories, the counting of goods, the fixing of values to real and personal property, the drawing of notes, and all the matters performed by Mr. Wisner while at Cincinnati and Baltimore, would, if done at home, have come within the ordinary duties of his office, and such as must have been naturally expected when he accepted the responsibilities of his trust as executor. And for the converting of this and other property into money, the statute yielded to the executors what would ordinarily be considered as good fees. And when it is considered that the prices of all these goods at Cincinnati and Baltimore were fixed by contract, and he had nothing to do but to see that the goods were counted correctly, and in this he was aided by Goodfellow and Kleinhans, his work in this respect was quite ordinary. The only values he fixed were upon real estate and the fixtures; and the fact that by his peculiar intelligence or persistence in this respect he was enabled to save money to the estate, if such be the fact, cannot aid him in demanding therefor more than the work was worth. It was his duty to give his best judgment, and his most earnest and honest labor, in the performance of his trust, the same as if the estate had been his own; and he is not permitted to profit out of his office because he has done his work well, and performed his trust faithfully, as he was in duty bound to do.

Mr. Joseph L. Hudson testifies that he should think it would take three persons 15 or 20 days to complete this

inventory. In fact it took only 6 days to finish the inventories in both cities. Mr. Hudson swears it would be worth $5,000,—the work that Mr. Wisner did in the matter. But an examination of his testimony shows that he figures it at this amount chiefly on the consideration that by his individual efforts Mr. Wisner saved to the estate the half of the sums of $5,500 and over $26,000 on the real estate and fixtures, for which saving, as heretofore shown, Mr. Wisner was not entitled to charge the estate. He says on cross-examination:

"I have placed Mr. Wisner's services at $5,000 because, in addition to taking the stock, he secured this large amount of $25,000 or $30,000 increase to the estate. I think it was certainly cheap. I do not say but what he would be fairly entitled to charge more, but he ought to have at least charged that; and I would not ask any man to take my stock for less than $2,500,—that is, a man that was competent to do it as I am competent myself."

When it is remembered that Mr. Wisner himself admits that he had no peculiar or expert qualifications. for taking this inventory, having no experience in the business, and that he had nothing to do with fixing the prices, but did the mechanical work of counting, in which he was aided by Mr. Kleinhans and Mr. Goodfellow, the last-named being an expert in the business, the evidence of Mr. Hudson seems to me to be of little or no value in arriving at the reasonableness of Mr. Wisner's charge for his services. The very high value that Mr. Hudson put upon Mr. Wisner's labors is exemplified by his testimony that it was worth $5,000 to explain the transaction to Mrs. Speirs. Such an estimation of services cannot aid us, or any other court, in fixing the value of an executor's work, however extraordinary it may be. Mr. Edson's testimony to the value of these services is based upon the same ground as that of Mr. Hudson's,—that the skill and brain-work of Mr. Wisner

saved to the estate this half of $30,000, or thereabouts, —and was not competent for the same reason. These were the only witnesses sworn as to the value of these services, excepting Mr. Wisner, and therefore the finding of the court is not based upon any competent evidence in the case outside of the testimony of the claimant.

In relation to the seventh item,—for the discount of the Carew notes,—we do not consider that this was outside of Mr. Wisner's ordinary duties as executor. The only object of this discount was that the estate might be a little sooner closed up and settled. It was an arrangement in which the estate lost something, a reasonable sum, that the executors might be at once discharged, and the residuary legatee receive the balance of the estate due her. The terms of discount, and the fact that the bank did not require the additional security of the indorsement of the estate upon the notes, show that it required but little effort to make this arrangement, and the charge of $1,400 for doing it would be grossly excessive, if anything could be allowed for the services.

The charge for selling the rink at Toledo, we think, was properly allowed. The property was out of the State, and the services must be deemed extraordinary. The counsel for the appellant argues that, inasmuch as the testimony shows that Mr. Wisner's management of this rink from the beginning resulted in a total loss of the whole property to the estate, the item should be disallowed. But we are not disposed to go into this matter. The evidence was considered by the circuit judge, and we shall not disturb his finding.

We do not think Mr. Wisner was entitled to anything for prevailing upon the widow and the guardian to consent that the sum of $26,459.09 might be deposited to their joint account to await the result of litigation between them. See *Spiers v. Roberts*, 73 Mich. 666 (41

N. W. Rep. 841).    There was nothing extraordinary in what he did in this respect.

We have now found that Mr. Wisner was entitled to the sum of $450 for extraordinary services, over and above his commissions, and outside of his time and labor at Cincinnati and Baltimore.    The probate court allowed him in gross the sum of $2,000 for extraordinary services. If we affirm the action of that court in this respect, he will receive the sum of $1,550 for the Mabley & Carew work, which is more than $100 per day, including the two days' work at Detroit, closing the matter up, on July 8 and 9.    When it is considered that Mr. Wisner testified that his charges as an attorney at law when he was away from home were $50 per day it would seem that this would be, to say the least, a *reasonable* compensation, and that he would be not only well paid for his work, but also for all the worry and responsibility of those 12 days, including his trouble in explaining the matter to Mrs. Speirs.

As the residuary legatee did not appeal from the judgment of the probate court, and as the judge of that court had better means of knowledge of the extent and character of Mr. Wisner's services to the estate than either of the appellate courts, we shall affirm the action of the probate judge as to the commissions and the allowance for extraordinary services.

This leaves the matter of the allowance of the sum paid to Kate Mabley alone to be determined.    The other matters we have disposed of.    There is but little dispute regarding the facts upon which this claim is based.    February 23, 1886, Miss Kate E. Mabley, a daughter of C. R. Mabley, deceased, filed her petition in the probate court for Wayne county, setting forth that in the fall of 1885, at the request of her mother, Mrs. Speirs, she took with her to California one of her sisters, Maud H. Mabley,

where they remained until the spring of 1886, and that during all that time she paid the expenses of Maud, who was a minor, amounting in all to $812.54; that in the summer of 1886 she was visited by two other of her minor sisters, Alice and Edah, and during their visit she paid their expenses for clothing, medical attendance, etc.,— for Alice, the sum of $102.65, and for Edah, the sum of $122.95; that such moneys paid out for them were necessary for their maintenance, and should have been paid by the widow (Mrs. Speirs) out of the allowance from said estate under the order of the probate court which she received from July, 1885, to September, 1886. Mrs. Speirs opposed the allowance of this claim, but the probate judge, on May 11, 1887, allowed the same at the sum of $1,038.14, with interest thereon at 7 per cent. from September 1, 1886. June 29, 1887, Mrs. Speirs appealed from the order allowing this claim, which appeal is still pending. Three days before this appeal, and on June 26, 1887, Mr. Wisner paid the claim. The probate judge, upon the accounting of Mr. Wisner, thought this claim ought not to be allowed until the appeal of Mrs. Speirs was disposed of, and disallowed it for the present.

I think the probate judge was correct in this conclusion. Mrs. Speirs, as residuary legatee, had a right to appeal from the order of the probate court allowing this amount to Miss Mabley, and she had 60 days in which to make and perfect her appeal. There was no particular reason why Mr. Wisner should pay it before the 60 days expired, and there was no way that Miss Mabley could enforce its payment before that time, as any steps she might take in that direction would at once be suspended upon appeal until the same was determined. How. Stat. § 6788. Mr. Wisner had no excuse for paying it. He had no right to thus cut off Mrs. Speirs' right of appeal. It must be remembered that he was not the sole executor

of this estate. He had no right to pay this money before the time permitted for an appeal had expired, without the consent of his co-executors. But he did not get the consent of Mrs. Speirs, nor did he consult her in regard to the matter. If he had consulted her, he would have known that she intended to appeal. It was his duty to consult her. It is true, this record shows, as did the one on the other appeal, that Mr. Wisner and Mrs. Speirs were at antipodes for some reason, that they did not agree in relation to a great many things, and that their personal relations were somewhat strained, to say the least. But that furnishes no reason, even if Mr. Wisner was in the right as to their differences, why he should totally ignore Mrs. Speirs in the management of the estate, and pay this money over, without her consent, and when he must have known that she was opposed to such payment, when he was not obliged to do so. Having taken this wholly unauthorized and unnecessary action, he must stand the chances, and the consequences of it. If it shall be finally determined on the hearing of the appeal that Miss Kate Mabley is entitled to this allowance from the estate, his action, in the end, will not harm him; but if, on the other hand, it shall be determined that she is not entitled to it, he must look somewhere else than to the estate for recompense.

But it is argued that Mrs. Speirs had no right of appeal from this order of the probate court. The counsel for Mr. Wisner contends that an order of the probate court providing for the support of the children is not appealable in the ordinary sense, and that it belongs to the same class of orders as allowances to a wife for temporary alimony and expenses of suit in proceedings for divorce. Such orders, it is claimed, are not appealable, but must be reached in a clear case of abuse of discretion by *mandamus* or like remedy, acting directly and without delay;

that the right of the widow and children to support pending the settlement of the estate is absolute; the amount of the allowance is the only question; and that this is in the discretion of the probate judge, which discretion cannot be reviewed unless he abuses it, and not arbitrarily by appeal. The argument is continued at length in the counsel's brief, showing that the delay upon appeal, if appeal was permissible, would ordinarily keep the widow and children out of any support for from five to eight months. In support of the argument he cites *Walker v. Hull*, 35 Mich. 488; *Moore v. Moore*, 48 Id. 271 (12 N. W. Rep. 180); *Mower's Appeal*, Id. 441 (12 N. W. Rep. 646).

But we have no such case here. It is conceded that a sufficient allowance was made the widow, and paid to her, for the support of these minor children; and the petition of Miss Kate Mabley sets forth that this money should have been paid to her by the widow out of such allowance, and that she has requested the widow to pay the same, which she has declined to do. The proper allowance has been made once by the probate court, and paid over to the proper person; therefore none of the reasons assigned by counsel, or stated in the cases cited, appear here why this order should not be an appealable one, and come under the statute which provides that any person aggrieved may appeal from an order of the probate court. How. Stat. § 6779.

This seems to me to be a question entirely between Miss Kate Mabley and Mrs. Speirs. She (Miss Mabley) bases her claim for the support of Maud chiefly upon the ground that Mrs. Speirs requested that she take the child to California; and for the others, that they visited her with their mother's permission. She was not asking in her petition that she be granted an allowance under the statute for these children as their proper custodian, to be expended

for their support, but, in effect, she brings a claim against the estate for moneys paid out and expended for them, which their mother ought to pay out of an allowance already made and paid by the executors to her for that purpose, but which she refuses to pay. From the allowance of such a claim, as before said, Mrs. Speirs, as residuary legatee, had a right to appeal; and Mr. Wisner had no business to pay it, as he did, to Miss Mabley.

It will therefore be certified to the probate court that the order of said court, made upon the second accounting of the said executor, Henry C. Wisner, stand affirmed in all things; and the finding and determinations of the circuit court will be overruled and vacated; and the said appellant Catherine Speirs will recover her costs against said Henry C. Wisner in this and the circuit court.

SHERWOOD, C. J., and CAMPBELL, J., concurred with MORSE, J.

LONG, J. I agree with my brethren in this case except upon the disallowance of the item of $1,095.67. This should be allowed to Mr. Wisner. Mrs. Speirs, by the terms of the will, is charged with the support, maintenance, and education of these minor children, and allowances have been made to her for such purposes by the probate court. She is also the residuary legatee of the estate. Mr. Wisner seems to have paid this amount in good faith, and I see no good reason for saying that the question of its allowance to him must be determined in some other proceeding.

CHAMPLIN, J., did not sit.