*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF BEVERLY M. HOWE.

---

KYLE RIEM, Personal Representative of the
ESTATE OF BEVERLY M. HOWE,

        Appellee,

v

THOMAS HOWE,

        Appellant,

and

STEVEN HOWE,

        Other Party.

UNPUBLISHED
March 9, 2023

Nos. 360090; 360890
Genesee Probate Court
LC No. 21-216835-DE

---

THOMAS HOWE,

        Plaintiff-Appellant,

v

ESTATE OF BEVERLY MAY HOWE,

        Defendant-Appellee,

and

STEVEN HOWE,

        Other Party.

No. 360578
Genesee Circuit Court
LC No. 21-116388-CZ

---

-1-

---

*In re* BEVERLY HOWE FAMILY TRUST.

---

GEORGE RIZIK, Trustee of the BEVERLY HOWE
FAMILY TRUST,

      Appellee,

v

THOMAS HOWE,

      Appellant,

and

KRAIG SIPPELL and STEVEN E. HOWE,

      Other Parties.

No.   360360
Genesee Probate Court
LC No.   18-210539-TV

---

THOMAS HOWE,

      Plaintiff-Appellant,

v

ESTATE OF BEVERLY MAY HOWE,

      Defendant-Appellee,

and

STEVEN HOWE,

      Other Party.

Nos.  360891; 361379
Genesee Probate Court
LC No.   21-116388-CZ

---

Before:  GLEICHER, C.J., AND BOONSTRA AND CAMERON, JJ.

PER CURIAM.

In these consolidated appeals,[1] appellant Thomas Howe appeals as of right several orders entered in these related cases involving the estate of Beverly May Howe (Docket Nos. 360090 and 360890), Thomas's civil action against Beverly Howe's estate (Docket Nos. 360578, 360891, and 361379), and the Beverly Howe Family Trust (Docket No. 360360). We remand for further proceedings regarding Thomas's objections to Personal Representative Kyle Riem's fees in Docket No. 360090, and remand for de novo review by the chief judge of Thomas's motion for disqualification in Docket No. 360890, but affirm in all other respects.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Beverly Howe died in March 2021, survived by her two sons, Steven Howe and Thomas Howe. In her final years, Beverly suffered from dementia. Because Thomas and Steven disagreed on nearly every aspect of caring for her and managing her assets, the probate court appointed an independent guardian and an independent conservator to oversee her care and property. After Beverly's death, the court appointed Kyle Riem as personal representative of her estate. George Rizik served as trustee of the Beverly Howe Family Trust.

The case involving the Beverly Howe Family Trust, and related cases involving the guardianship of Beverly Howe, the Beverly M. Howe Revocable Trust, and the Wallace Howe Family Trust have been before this Court several times previously.[2] The instant appeals involve Beverly's Family Trust, her decedent's estate, and an action filed by Thomas against Beverly's estate.

In a prior appeal involving the Beverly Howe Family Trust, this Court remanded the case to the probate court for "factual findings regarding Thomas's specific challenges to [Trustee] Rizik's fees and charges sufficient to facilitate appellate review." *In re Beverly Howe Family Trust*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2021 (Docket No. 355094), p 4. The probate court's decision on remand is the subject of Thomas's appeal in Docket No. 360360.

Below, Thomas claimed—and continues to claim—that a potential medical-malpractice claim against Beverly's healthcare providers is a potentially substantial asset of the estate. Steven Howe disagreed. Riem, the estate's personal representative, cooperated with Thomas's requests for an autopsy and production of Beverly's medical records. Riem also consulted Beverly's long-time family physician, Dr. Saed J. Sahouri, M.D., who reviewed the autopsy report and medical records, but found no cause to further investigate a claim for medical malpractice. Because

---

[1] *In re Howe Estate*, unpublished Order of the Court of Appeals, entered September 27, 2022 (Docket Nos. 360090, 360360, 360578, 360890, 360891, 361379).

[2] See *In re Wallace Howe Family Trust*, unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket Nos. 355909, 357016, 357658, 357023, 358509, 358199, 358512); *In re Beverly Howe Family Trust*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2021 (Docket No. 355094); *In re Beverly M Howe Revocable Trust*, unpublished per curiam opinion of the Court of Appeals, issued May 27, 2021 (Docket No. 354458).

Thomas was adamant that a medical-malpractice claim should still be investigated, the probate court ordered Thomas to pay $5,000 toward an investigation and appointed Michael Behm, a malpractice attorney, to investigate a potential malpractice claim. The order provided, however, that Thomas was to be reimbursed from any recovery if a claim was found to be meritorious.

Riem petitioned to resign as personal representative, and Thomas petitioned for his own appointment as personal representative. The probate court denied both petitions. Because most of Beverly's assets were held by her trusts, the probate estate consisted mostly of a small bank account and some checks, totaling approximately $5,800, and the contents of a safe-deposit box. Beverly's will recommended a procedure for dividing items of personal property between Thomas and Steven if they could not agree. But because the probate court became concerned that the estate did not have sufficient liquid assets to pay Riem's fees, it authorized Riem to sell items in Beverly's safe-deposit box, but provided that Thomas or Steven would have the first opportunity to purchase any item that was sold. Thomas challenges these decisions in Docket No. 360090.

Thomas moved to disqualify the Probate Court Judge, Jennie E. Barkey. The judge denied the motion, but did not refer the matter to the chief judge for de novo review. Thomas also moved for a stay of all proceedings. The probate court partially granted the stay, applying it only toward investigation of the malpractice action. These decisions are the subject of Thomas's issues in Docket No. 360890.

Thomas also filed an action against the estate in circuit court, seeking recovery of $31,173.19 for attendant care and household services he provided to Beverly before her death. The circuit court transferred the case to the probate court and ordered that it be assigned to Judge Barkey, who had been assigned to the probate case. Riem, in his capacity as personal representative, moved for imposition of a security bond against respondent for litigation costs. The probate court granted the motion. Thomas challenges these decisions in Docket Nos. 360578, 360891, and 361379.

## II. DOCKET NO. 360090

### A. PERSONAL REPRESENTATIVE'S PETITION TO RESIGN AND THOMAS'S PETITION FOR APPOINTMENT

Thomas argues that the probate court erred by denying Riem's petition to resign as personal representative and by denying Thomas's petition for appointment as successor personal representative. We disagree.

#### 1. PRESERVATION AND STANDARD OF REVIEW

A probate court's decision regarding the appointment or removal of a personal representative is reviewed for an abuse of discretion. *In re Conservatorship of Murray*, 336 Mich App 234, 240; 970 NW2d 372 (2021); *In re Kramek Estate*, 268 Mich App 565, 575; 710 NW2d 753 (2005). A court abuses its discretion when it renders a decision that falls outside the range of principled outcomes. *Bitterman v Village of Oakley*, 309 Mich App 53, 61; 868 NW2d 642 (2015). The court's factual findings are reviewed for clear error. *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). A factual finding is clearly erroneous if this Court is left with a

definite and firm conviction that the court made a mistake, even if there is evidence to support the court's finding. *In re Conservatorship of Brody*, 321 Mich App 332, 336; 909 NW2d 849 (2017).

Issues involving the application and interpretation of a statute are reviewed de novo. *In re Estate of Huntington*, 339 Mich App 8, 16; 981 NW2d 72 (2021) (citation omitted).

> The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. The first step in determining legislative intent is to review the language of the statute. If the statute is unambiguous, the Legislature is presumed to have intended the meaning expressed, and judicial construction is neither required nor permissible. However, when reasonable minds may differ with regard to the meaning of a statute, the courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. [*In re Estate of Sprenkle-Hill*, 265 Mich App 254, 257-258; 703 NW2d 191 (2005) (quotation marks, citations, and alterations omitted).]

Thomas argues that the probate court erroneously took judicial notice of the related files in Beverly's guardianship and conservatorship, and the other trusts when it found that he was not suited to serve as personal representative of Beverly's estate. But because Thomas did not make a timely[3] objection when the court announced its intent to take judicial notice of these other files, this issue is unpreserved. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020); MRE 103(a)(1). A trial court's decision whether to take judicial notice of facts not of record is generally reviewed for an abuse of discretion, *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013), but because this issue is unpreserved, it is reviewed for plain error affecting Thomas's substantial rights, *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). "Plain error affects a litigant's substantial rights if the party is prejudiced by the error, meaning that the error affected the outcome of the lower court proceedings." *Johnson v Mich Minority Purchasing Council*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357979; slip op at 11.

### 2. LAW AND ANALYSIS

MCL 700.3610 specifies a procedure for acceptance of a personal representative's resignation. This statute states, in part:

> After giving at least 14 days' written notice to known interested persons, a personal representative may resign by filing a written statement of resignation with the register. If no one applies or petitions for appointment of a successor personal representative within the time indicated in the notice, the filed statement of resignation is ineffective as a termination of appointment and is effective only upon the appointment and qualification of a successor personal representative and

---

[3] We recognize Thomas made a similar argument during a later January 31, 2022 hearing in this case. However, this objection, which was made nearly three weeks later at a separate hearing, was untimely.

-5-

delivery of the estate property to the successor personal representative. [MCL 700.3610(3).]

Although Thomas petitioned to be appointed successor personal representative of Beverly's estate, this petition did not result in Riem's resignation because the probate court found Thomas was not suitable to serve as personal representative. The probate court's conclusions are correct. Indeed, a personal representative's resignation becomes effective "only upon the appointment and qualification of a successor personal representative and delivery of the estate property to the successor personal representative." MCL 700.3610(3). Therefore, the probate court could not allow Riem to resign because no one was appointed as a successor personal representative.

Even so, Thomas challenges the probate court's factual basis for denying his appointment. But the probate court cited a number of its findings in the related cases in its order denying Thomas's petition, including the probate court's earlier findings of criminal contempt against Thomas; attempts to sabotage the relationship between Beverly and Steven; and mishandling of trust monies. Thomas argues on appeal that the probate court erred in taking judicial notice of the records in the other files because he disputed some of the matters in these files. However, a probate court is permitted to take judicial notice of its own files. *In re Marxhausen's Estate*, 247 Mich 192, 199; 225 NW 632 (1929); see also MRE 201 (permitting a court to take judicial notice of adjudicative facts). While Thomas's arguments in this appeal challenge the factual basis for the probate court's findings in the related cases, Thomas fails to explain why the probate court was not permitted to take judicial notice of its earlier findings. Thus, the probate court did not err in denying Thomas's petition.

## B. MEDICAL-MALPRACTICE INVESTIGATION COSTS

This issue concerns Thomas's pursuit of a medical-malpractice action against Beverly's healthcare providers. Thomas argues that the probate court erred by requiring him to pay $5,000 toward the cost of investigating the medical-malpractice claim. Thomas further argues that the court erroneously appointed attorney Behm to investigate any malpractice claim because there existed a conflict of interest. We reject both of Thomas's arguments.

### 1. PRESERVATION AND STANDARD OF REVIEW

Thomas's argument regarding payment for investigation costs was raised in the probate court, and is preserved for our review. *Glasker-Davis*, 333 Mich App at 227-228. However, his argument regarding Behm's appointment was not raised in the probate court and is therefore, unpreserved. *Id*. "This Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (citation and quotation marks omitted). We review Thomas's unpreserved claim for plain error affecting his substantial rights. *Demski*, 309 Mich App at 426-427.

### 2. LAW AND ANALYSIS

A personal representative has standing to pursue any claims a decedent had standing to bring prior to their death. MCL 700.3703(3). Beyond that, "the personal representative may [also]

invoke the court's jurisdiction in a proceeding authorized by this act to resolve a question concerning the estate or its administration." MCL 700.3704.

The probate court's decision requiring Thomas to pay the expense of further investigating a medical-malpractice claim, subject to being reimbursed from any wrongful death recovery if a claim was found to be meritorious, was a reasonable approach for balancing the parties' competing interests. Riem had already obtained an autopsy at Thomas's request and consulted Beverly's long-time family doctor, who concluded that there was no factual basis for pursuing a malpractice claim. This investigation reasonably supported Riem's belief that a medical-malpractice action was not warranted and would not be beneficial to the estate. Steven, the estate's other beneficiary, also opposed pursuing a medical-malpractice claim. Although Thomas began to acquire medical records, he had yet to come forward with any evidence supporting the elements of a medical-malpractice claim. See *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). Under these circumstances, the probate court's decision reasonably allowed Thomas to pursue the claim, but without risking further financial loss to the estate, especially considering there was a factual basis that pursuing a medical-malpractice claim was not in the estate's interests. It was not unreasonable to require Thomas to bear the expense of further investigation, subject to being reimbursed by any recovery if a viable claim came to fruition. Because the court's decision was reasonable, the court did not abuse its discretion.

Thomas's additional arguments against the probate court's choice of Behm as an attorney to investigate any malpractice claim are not supported by the record. Behm was a reasonable choice because he was a malpractice attorney. Thomas argues that Behm had a conflict of interest because his spouse is a Genesee Circuit Court judge. Thomas also suggests that Behm's appointment somehow benefited the probate court judge. An attorney is not permitted to "represent a client if the representation of that client will be directly adverse to another client." MRPC 1.7(a). An attorney also may not represent a client "if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests." MRPC 1.7(b). Thomas merely speculates that the probate court's appointment of Behm somehow served the court's interests because Behm's spouse was a circuit court judge. Thomas fails to adequately explain how the fact that Behm was married to a different judge on the same court either served the probate court's interests or created a conflict of interest where there was no allegation that Behm's spouse had any involvement in this or the related cases. Accordingly, Thomas has failed to establish any plain error affecting his substantial rights with respect to Behm's appointment.

## C. SALE OF PERSONAL PROPERTY

Thomas next argues that the probate court violated the terms of Beverly's will by ordering the sale of personal property to pay Riem's fees. We disagree.

## 1. STANDARD OF REVIEW

A probate court's construction and interpretation of the language in a will or trust is reviewed de novo. *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012). "The primary duty of any court faced with the task of resolving a disputed testamentary disposition is to effectuate as nearly as possible the intention of the testator." *In re Butterfield's Estate*, 405

Mich 702, 711; 275 NW2d 262 (1979). "Where there is no ambiguity, that intention is to be gleaned from the four corners of the instrument, . . . and the court has merely to interpret and enforce the language employed." *Id*. (citation omitted).

## 2. LAW AND ANALYSIS

"A personal representative is entitled to reasonable compensation for services performed. A personal representative may pay the personal representative's own compensation periodically as earned without prior court approval." MCL 700.3719(1). "A personal representative also may renounce the right to all or a part of the compensation. A written renunciation of fee may be filed with the court and shall be served on all affected interested persons." MCL 700.3719(4). A plain reading of these statutes demonstrates Riem was entitled to compensation for his work as personal representative of Beverly's estate.

Thomas does not challenge the fact that the probate court ordered Riem's compensation. Rather, he asserts that the source of payment—from the sale of Beverly's personal items—contradicted the terms of Beverly's will. In Thomas's view, the only appropriate disposition of Beverly's personal property was distribution by lot and, by ordering the sale of Beverly's personal items to cover the costs of Riem's compensation, the probate court violated the terms of the will.

Thomas references the portion of Beverly's will stating, in part:

> In the interest of family harmony, I state that I have not promised any particular item of tangible personal property to any person. Therefore, if there is a dispute between the beneficiaries over which items each should receive, I recommend but do not require that all such items be appraised and that each beneficiary then select in rotation (my personal representative selecting for any person unable to act for himself) items at the appraised value, the order of choice to be determined by lot.

The purpose of this section of the will was to direct the distribution of Beverly's personal items after her death. This section does not contemplate payment for services rendered and Thomas's reliance on this section as directing payment for services is misplaced. Rather, payment for services was referenced in another section of Beverly's will which stated: "All debts, expenses, and taxes imposed by reason of my death upon any transfer of property . . . shall be paid by my personal representative from the residual of my estate without apportionment unless voluntarily paid by some other party."

Riem's compensation was an expense arising from Beverly's death, and it was appropriate for the probate court to order the sale of some personal property to pay this expense. To the extent that the funds paid for any item exceeded Riem's fees and other administration expenses, Thomas and Steven would receive the balance as their share of the estate as directed by the distribution section of Beverly's will. Thomas has failed to establish that the probate court erred when it authorized Riem to sell personal property pursuant to this method.

### D. APPROVAL OF PERSONAL REPRESENTATIVE'S FEES

Thomas also argues that the probate court erred by failing to consider his objections to $1,612.50 of the fees that Riem requested. We agree.

### 1. STANDARD OF REVIEW

This Court reviews a trial court's decision to allow fiduciary fees for a personal representative for an abuse of discretion. *In re Baird Estate*, 137 Mich App 634, 637; 357 NW2d 912 (1984); see also *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982) (a court's finding of the reasonableness of attorney fees is reviewed for an abuse of discretion). The probate court's underlying findings of fact are reviewed for clear error, and any questions of law are reviewed de novo. *Id.*

### 2. LAW AND ANALYSIS

"A personal representative is entitled to reasonable compensation for services performed." MCL 700.3719. However, a court may also order a refund of excessive compensation. MCL 700.3721. A personal representative's fee can be unreasonable even if the personal representative expends considerable time and effort. *Becht v Miller*, 279 Mich 629, 640-641; 273 NW 294 (1937). In a fiduciary's claim for compensation, "[t]he burden of proof is on the person claiming compensation." *In re Baird*, 137 Mich App at 637. "The claimant must satisfy the court that the services rendered were necessary and that the charges therefor are reasonable." *Id*. However, an attorney who acts as a fiduciary is not entitled to charge an attorney-fee rate for fiduciary services. *Wisner v Mabley's Estate*, 70 Mich 271, 285; 38 NW 262 (1888).

Riem submitted a bill for services rendered as of October 31, 2021, in the amount $6,651.05. Thomas challenged $1,612.50 of Riem's requested fees. The probate court did not address any of Thomas's objections other than to acknowledge that they were made. Without any findings or an explanation from the probate court on the contested matters, this Court, as an error-correcting Court, is not in a position to review the probate court's ultimate determination or determine whether the court erred by approving the contested fees. Accordingly, we remand this case to the probate court for factual findings regarding Thomas's specific challenges to Riem's fees sufficient to facilitate appellate review.

### III. DOCKET NOS. 360578, 360891 & 361379

### A. JURISDICTION

Thomas argues the circuit court erred by transferring his circuit court action against Beverly's estate to the probate court and ordering that the case be assigned to Judge Barkey. In a related issue, Thomas contends that, after the transfer, the probate court erred by denying his motion for summary disposition under MCR 2.116(C)(1) (lack of jurisdiction over the person or property) and (C)(4) (lack of subject-matter jurisdiction). We disagree.

## 1. STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a question of law that is reviewed de novo. *Bank v Mich Ed Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016). Issues of statutory interpretation are also reviewed de novo. *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 179; 931 NW2d 539 (2019). A trial court's decision on a motion for summary disposition on jurisdictional grounds is also reviewed de novo. *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 713-714; 909 NW2d 890 (2017); *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 426; 633 NW2d 408 (2001).

## 2. LAW AND ANALYSIS

Const 1963, art VI, § 1 provides:

> The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.

Probate court jurisdiction is defined by Const 1963, art VI, § 15, which states:

> In each county organized for judicial purposes there shall be a probate court. The legislature may create or alter probate court districts of more than one county if approved in each affected county by a majority of the electors voting on the question. The legislature may provide for the combination of the office of probate judge with any judicial office of limited jurisdiction within a county with supplemental salary as provided by law. The jurisdiction, powers and duties of the probate court and of the judges thereof shall be provided by law. They shall have original jurisdiction in all cases of juvenile delinquents and dependents, except as otherwise provided by law.

Const 1963, art VI, § 23 permits our Supreme Court to "authorize persons who have been elected and served as judges to perform judicial duties for limited periods or specific assignments."

MCL 600.401(1) requires each judicial circuit court to decide by majority vote whether to adopt a plan of concurrent jurisdiction. The plan of concurrent jurisdiction, if adopted, is subject to the approval of the Supreme Court and the requirements of MCL 600.410, MCL 600.841, and MCL 600.8304. The plan of concurrent jurisdiction may provide that "[t]he circuit court and 1 or more circuit judges may exercise the power and jurisdiction of the probate court" and/or that "[t]he probate court and 1 or more probate judges may exercise the power and jurisdiction of the circuit court." MCL 600.401(2)(a) and (c). The probate court has jurisdiction as provided under MCL 700.1101 to MCL 700.8206 of the Estates and Protected Individuals Code ("EPIC"), MCL 700.1101 *et seq*. See MCL 600.841(1)(b). MCL 600.846 provides:

> In an action or proceeding pending in any other court of this state of which the probate court and the other court have concurrent jurisdiction, the judge of the other court, upon motion of a party and after a finding and order on the jurisdictional

issue, may by order remove the action or proceeding to the probate court. If the action or proceeding is removed to the probate court, the judge of the other court shall forward to the probate court the original of all papers in the action or proceeding and thereafter proceedings shall not be had before the other court.

MCL 700.1303, a provision of the EPIC, states:

(1) In addition to the jurisdiction conferred by section 1302 and other laws, the [probate] court has concurrent legal and equitable jurisdiction to do all of the following in regard to an estate of a decedent, protected individual, ward, or trust:

(a) Determine a property right or interest.

(b) Authorize partition of property.

(c) Authorize or compel specific performance of a contract in a joint or mutual will or of a contract to leave property by will.

(d) Ascertain if individuals have survived as provided in this act.

(e) Determine cy pres or a gift, grant, bequest, or devise in trust or otherwise as provided in 1915 PA 280, MCL 554.351 to 554.353.

(f) Hear and decide an action or proceeding against a distributee of a fiduciary of the estate to enforce liability that arises because the estate was liable upon some claim or demand before distribution of the estate.

(g) Impose a constructive trust.

(h) Hear and decide a claim by or against a fiduciary or trustee for the return of property.

(i) Hear and decide a contract proceeding or action by or against an estate, trust, or ward.

(j) Require, hear, or settle an accounting of an agent under a power of attorney.

(2) *If the probate court has concurrent jurisdiction of an action or proceeding that is pending in another court, on the motion of a party to the action or proceeding and after a finding and order on the jurisdictional issue, the other court may order removal of the action or proceeding to the probate court.* If the action or proceeding is removed to the probate court, the other court shall forward to the probate court the original of all papers in the action or proceeding. After that transfer, the other court shall not hear the action or proceeding.

(3) The underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving a decedent's, a protected

individual's, a ward's, or a trust estate by consolidating the probate and other related actions or proceedings in the probate court. [Emphasis added.]

Genesee Circuit Court Local Administrative Order No. 2003-1 provides, in pertinent part:

Pursuant to MCL 600.401 *et seq*., as added by 2002 PA 678, courts may establish a plan of concurrent jurisdiction, subject to certain conditions and limitations, within a county or judicial circuit. Subject to approval by the Supreme Court, a plan of concurrent jurisdiction may be adopted by a majority vote of judges of the participating trial courts.

* * *

B. Plan Description

Subject to approval by the Michigan Supreme Court and to certain other limitations as defined in 2002 PA 678 and described in these requirements, a plan of concurrent jurisdiction is adopted by a majority vote of each group of judges as follows: circuit, probate and district judges.

The plan of concurrent jurisdiction provides for exercise of power and jurisdiction as follows (all apply):

* * *

The probate court and one or more probate judges may exercise the power and jurisdiction of the circuit court.

* * *

The plan of concurrent jurisdiction is further subject to the following exceptions:

* * *

(e) The Probate Court shall have exclusive jurisdiction over trust and estate matters.

The Michigan Supreme Court has approved the Genesee Circuit Court's plan. See Administrative Order No. 2004-4.

Thomas does not deny that his action against Riem for payment of a claim against the estate is within the concurrent jurisdiction of the circuit court and probate court. He argues instead that the circuit court had no authority to reassign the case to a probate judge pursuant to this plan because no party moved for concurrent jurisdiction as specified in the statutes. Thomas emphasizes that MCL 600.846 states "upon motion of a party . . . [the court] may by order remove the action or proceeding to the probate court," and MCL 700.1303(2) states that "on the motion of a party . . . the other court may order removal." Thomas argues that the court's local administrative

-12-

order must comply with the statutory requirement that a party file a motion to remove the case to probate court.

A plain reading of the statutory scheme demonstrates that, although the statutes authorize a court to initiate the process of exercising concurrent jurisdiction on motion of a party, the statutes do not prohibit the court from initiating the process. Nor does it reasonably follow that a court-initiated transfer is void when, as here, one party agrees to the transfer, the conditions for a transfer are satisfied, and the other party fails to articulate a substantive reason for why transfer should not take place.

In sum, the circuit court had the authority to transfer Thomas's circuit court action to the probate court. Moreover, the interests of judicial economy favored transferring the case to Judge Barkey, who was already presiding over actions involving the same estate and related probate matters. Because Thomas's attacks on the probate court's jurisdiction are without merit, the probate court properly denied Thomas's motion for summary disposition.

## B. SECURITY FOR COSTS

Thomas argues that the probate court erred by requiring him to post a security bond under MCR 2.109. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

Riem moved the probate court to impose a security bond against Thomas. Thomas did not oppose Riem's motion for a security bond in the probate court. On appeal, he asserts that a challenge to the motion for a security bond would have constituted a general appearance, thereby waiving his objection to the probate court's jurisdiction. Because Thomas did not raise any objection to the imposition of the security bond, Thomas's present arguments are unpreserved for our review. *Glasker-Davis*, 333 Mich App at 227-228.

The court's decision to require a security bond is generally reviewed for an abuse of discretion. *In re Surety Bond for Costs*, 226 Mich App 321, 331; 573 NW2d 300 (1997). Issues concerning the interpretation and application of a court rule involve questions of law subject to de novo review. *In re Estate of Huntington*, 339 Mich App at 16-17. Unpreserved claims of error are reviewed for plain error affecting substantial rights. *Demski*, 309 Mich App at 426-427.

### 2. LAW AND ANALYSIS

MCR 2.109 states, in pertinent part:

(A) Motion. On motion of a party against whom a claim has been asserted in a civil action, if it appears reasonable and proper, the court may order the opposing party to file with the court clerk a bond with surety as required by the court in an amount sufficient to cover all costs and other recoverable expenses that may be awarded by the trial court, or, if the claiming party appeals, by the trial and appellate courts. The court shall determine the amount in its discretion. MCR 3.604(E) and (F) govern objections to the surety.

(B) Exceptions. Subrule (A) does not apply in the following circumstances:

(1) The court may allow a party to proceed without furnishing security for costs if the party's pleading states a legitimate claim and the party shows by affidavit that he or she is financially unable to furnish a security bond.

MCR 3.604(E) and (F) provide:

(E) Objections to Surety. A party for whose benefit a bond is given may, within 7 days after receipt of a copy of the bond, serve on the officer taking the bond and the party giving the bond a notice that the party objects to the sufficiency of the surety. Failure to do so waives all objections to the surety.

(F) Hearing on Objections to Surety. Notice of objection to a surety must be filed as a motion for hearing on objections to the bond.

Preliminarily, Thomas argues that this issue should not be analyzed as an unpreserved claim of error because he could not have raised arguments opposing the imposition of a security bond in the probate court without waiving his claim that the court lacked personal jurisdiction over him. An objection to personal jurisdiction may be waived by filing a general appearance in an action. *Nash v Salter*, 280 Mich App 104, 114-115; 760 NW2d 612 (2008). However, as the party who filed the action, Thomas is not in a position to claim that personal jurisdiction was lacking. See *Yoost v Caspari*, 295 Mich App 209, 219-220; 813 NW2d 783 (2012). Further, Thomas's argument that the circuit court improperly transferred the case to probate court under the court's concurrent jurisdiction procedures, thus depriving the probate court of jurisdiction, is more of an attack on subject-matter jurisdiction. Lack of subject-matter jurisdiction may be raised at any time, and cannot be waived by inaction. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51 n 3; 832 NW2d 728 (2013) (citation omitted). Thus, Thomas was free to appear before the probate court for general purposes without waiving any claim that the probate court lacked subject-matter jurisdiction. Accordingly, we reject Thomas's argument that he was barred from challenging the imposition of a surety bond.

Thomas argues that Riem failed to establish a sufficient factual basis for the imposition of a security bond. MCR 2.609(A) permits imposition of a security bond "if it appears reasonable and proper" to the court. The rule does not specify a burden of proof for the moving party. The appearance that a security bond is reasonable and proper is sufficient. Moreover, MCR 2.109(A)(1) allows an exception to the imposition of bond if the opposing party's pleading "states a legitimate claim" and the opposing party "shows by affidavit that he or she is financially unable to furnish a security bond." Thomas failed to satisfy this burden because he did not present a defense to Riem's motion.

Thomas argues that Riem's assertions regarding the estate's assets and anticipated litigation expenses are irrelevant because these facts pertained to other actions. As discussed earlier, however, the probate court was permitted to take judicial notice of the related files. Thomas has failed to establish that the probate court's imposition of a security bond was plain error affecting his substantial rights.

-14-

## C. ASSIGNMENT TO A SPECIFIC JUDGE

Thomas also argues that it was improper for the circuit court to order that the case be assigned to Judge Barkey when transferring the case to probate court. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

Because Thomas did not argue below that the circuit court failed to follow proper procedures when reassigning the case, this issue is unpreserved. *Glasker-Davis*, 333 Mich App at 227-228. Therefore, we review this issue for plain error affecting Thomas's substantial rights. *Demski*, 309 Mich App at 426-427.

### 2. LAW AND ANALYSIS

MCR 8.111 provides, in pertinent part:

(B) Assignment. All cases must be assigned by lot, unless a different system has been adopted by local court administrative order under the provisions of subrule 8.112. Assignment will occur at the time the case is filed or before a contested hearing or uncontested dispositional hearing in the case, as the chief judge directs. Civil actions must be assigned within appropriate categories determined by the chief judge. The chief judge may receive fewer assignments in order to perform the duties of chief judge.

(C) Reassignment.

(1) If a judge is disqualified or for other good cause cannot undertake an assigned case, the chief judge may reassign it to another judge by a written order stating the reason. To the extent feasible, the alternate judge should be selected by lot. The chief judge shall file the order with the trial court clerk and have the clerk notify the attorneys of record. The chief judge may also designate a judge to act temporarily until a case is reassigned or during a temporary absence of a judge to whom a case has been assigned.

(2) If a judge is reassigned under a concurrent jurisdiction plan or a family court plan, the successor judge will be assigned all cases filed after the date of reassignment, any pending matters, and postjudgment matters that relate to disposed cases. The chief judge shall submit a local administrative order under MCR 8.112 identifying the revised caseload distribution.

(D) Actions Arising Out of Same Transaction or Occurrence. Subject to subrule 8.111(C),

(1) if one of two or more actions arising out of the same transaction or occurrence has been assigned to a judge, the other action or actions must be assigned to that judge;

-15-

(2) if an action arises out of the same transaction or occurrence as a civil action previously dismissed or transferred, the action must be assigned to the judge to whom the earlier action was assigned;

Thomas's claim against the estate arose from the same transactions and occurrences related to the probate estate action. Therefore, the circuit court properly ordered that, upon transfer to the probate court, the case be assigned to Judge Barkey under MCR 8.111(D)(1). Additionally, although MCR 8.111(C)(2) applies to assignment of cases filed after the original reassignment in a concurrent jurisdiction plan, it reflects the intention of keeping related actions, including probate actions, together under the same judge. The circuit court did not err in reassigning this case because the reassignment to Judge Barkey was consistent with MCR 8.111(C)(2).

## IV. DOCKET NO. 360360

### A. JUDICIAL NOTICE

Thomas argues that the probate court erred when it took judicial notice of its files when reconsidering Rizik's fees and charged in accordance with this Court remand instructions in *In re Beverly Howe Family Trust* (Docket No. 355094), unpub op at 4. We disagree.

#### 1. STANDARD OF REVIEW

A trial court's decision whether to take judicial notice of facts not of record is reviewed for an abuse of discretion. *Lenawee Co*, 301 Mich App at 149.

#### 2. LAW AND ANALYSIS

As we explain above, it is well-established that the probate court had the authority to take judicial notice of its own files. *In re Marxhausen's Estate*, 247 Mich at 199; *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). Therefore, the probate court did not err by taking judicial notice of its other files.

### B. ACCOUNTING

Next, Thomas argues that the probate court failed to comply with this Court's remand instructions in the prior appeal because it failed to make findings whether Rizik satisfied his burden of proof in establishing his entitlement to the requested fees. We disagree.

#### 1. STANDARD OF REVIEW

A probate court's approval of a fiduciary's accounting and attorney fees is reviewed for an abuse of discretion. *In re Adams Estate*, 257 Mich App 230, 236; 667 NW2d 904 (2003). The factual findings underlying the court's decision are reviewed for clear error. *In re Portus*, 325 Mich App at 381. "Whether the lower court properly followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 406; 952 NW2d 586 (2020) (quotation marks and citation omitted).

-16-

## 2. LAW AND ANALYSIS

MCL 700.7904 provides:

> (1) In a proceeding involving the administration of a trust, the court, as justice and equity require, may award costs and expenses, including reasonable attorney fees, to any party who enhances, preserves, or protects trust property, to be paid from the trust that is the subject of the proceeding.

> (2) Subject to subsection (3), if a trustee participates in a civil action or proceeding in good faith, whether successful or not, the trustee is entitled to receive from trust property all expenses and disbursements including reasonable attorney fees that the trustee incurs in connection with its participation.

> (3) A court may reduce or deny a trustee's claim for compensation, expenses, or disbursements with respect to a breach of trust.

"Upon acceptance of a trusteeship, the trustee shall administer the trust in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the trust beneficiaries, and in accordance with this article." MCL 700.7801. "A trustee shall administer the trust solely in the interests of the trust beneficiaries." MCL 700.7802(1). A trustee may receive reasonable compensation for services rendered for the trust. MCL 700.7802(7)(b). The party claiming attorney fees bears the burden of proving the reasonableness of the requested fees. *Smith v Khouri*, 481 Mich 519, 528-529; 751 NW2d 472 (2008). An attorney who acts as a fiduciary is not entitled to charge an attorney-fee rate for fiduciary services. *Wisner*, 70 Mich at 285; see also *In re Laverty Estate*, unpublished per curiam opinion of the Court of Appeals, issued June 18, 1999 (Docket No. 207040), p 6 ("an attorney acting as a fiduciary is not entitled to charge attorney rates for fiduciary services").

Rizik attached an Attorney Fee Certification statement to his petition to approve the accounting. It was supported by a 12-page Activities Export itemizing Rizik's charges. Each charge included the date, the type of charge (hourly or cost), the user (Rizik or his assistant, Casey Lostutter), the number of hours charged, and the billable amount. Rizik's charges were billed at an hourly rate of $300, while Lostutter's charges were charged at a rate of $60 per hour. The items listed as costs were attributed to Lostutter. Each of these had a quantity listing of one hour, but the rate charged was the actual cost. For example, on May 4, 2020, an item described as "Postage," was attributed to Lostutter, had a stated quantity of one hour, but the total charge was $14.80. Rizik billed a total of 20.4 hours, and Lostutter 9.2 hours. Seventeen items were listed as costs attached to a quantity listing of one hour.

In the prior appeal, this Court enumerated the objections that Thomas raised, but which were not adequately addressed by the probate court:

> [F]ees for (1) several services that the successor trustee sought recovery for that were performed by a fiduciary, rather than an attorney, but under circumstances in which the successor trustee did not seek fiduciary fees; (2) fees for services that the successor trustee rendered as part of a transaction involving the transfer of Beverly's home into the Family trust, and fees that only benefited the successor

-17-

trustee, not the trust estate; and (3) $242 for e-mails relating to services rendered that the successor trustee did not produce in response to a discovery request. Thomas also challenges as unreasonable the $300 hourly fee charged by Rizik for his services. Thomas further asserts that the amount of hours for which Rizik charged for his legal services is unclear from the "Activities Report" he submitted as part of the final accounting. [*In re Beverly Howe Family Trust*, (Docket No. 355094), unpub op at 4.]

The probate court explained why this Court required articulated findings:

[T]he opinion of the Court of Appeals states specifically that Mr. Howe's objections are the fees sought by Mr. Rizik are performed in his capacity of a fiduciary and therefore should be compensated as such not as an attorney. Number 2, he, Mr. Rizik, should not receive fees for the transfer of Beverly's home into the family trust because that only benefited Mr. Rizik not the estate. Number 3, the $242.00 for emails related to service rendered that Mr. Rizik did not produce a response to a discovery request. Four, the total number of hours that Mr. Rizik worked— worked is unclear. Five, Mr. Rizik's hourly fees of $300.00 is unreasonable.

Regarding the attorney-rate/fiduciary-rate objection, the probate court stated:

Mr. Rizik is only asking to be compensated at attorney rate for those duties in his legal capacity. The bill is for 8 months legal work, 20.4 hours, that's all he's asking for. For the clerical type work, it's at a low—a lower hour—a lower rate that is not unexpected for clerical type work and that's only 9.2 hours. So I have no problem with what he billed, at what rate, for what activity.

Although Thomas argues that Rizik improperly charged an attorney-fee rate for several services that were performed by a fiduciary, rather than an attorney, a review of the eight entries that Thomas contests reveals that Rizik only charged a reduced fiduciary fee for five of the entries. The remaining three entries comprise one hour of services, and it is not clear that these activities do not qualify as services performed in Rizik's capacity as an attorney. Thomas has not established any clear error related to the one-hour discrepancy. *In re Conservatorship of Brody*, 321 Mich App at 336.

Thomas also states that items on Rizik's Activity Export related to the transfer of Beverly's family home were improperly billed because those services were not related to the Beverly Howe Family Trust. The probate court addressed this objection, stating:

We've had the hearing on this objection and it continues and I understand because I didn't rule in a way that Thomas Howe thinks I should. We had several hearings on it. The part that Mr. Rizik played as trustee for transfer of this home, he had every right to be compensated for.

The probate court satisfied this Court's remand instructions by making findings regarding this specific objection, finding that the requested fees were proper because Rizik had a role in the transfer of the home, which was the subject of several hearings.

Thomas argues that the probate court's finding is not supported by the record, and he denies that any hearing was held. He states that the home was owned by a different trust, and that the transfer was conducted by the guardian, who did so without authority, in violation of Beverly's estate plan. However, Thomas does not cite any portion of the record supporting his claim of any impropriety in regard to the transfer. He also does not cite any part of the record contradicting the probate court's statement that Rizik played a role in the transfer. An appellant's brief must contain a clear and concise statement of facts, "with specific page references to the transcript, the pleadings, or other document or paper filed with the trial court." MCR 7.212(C)(6). "Facts stated [in the brief] must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court." MCR 7.212(C)(7). This Court "will not search the record for factual support" for a party's claims. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 388; 689 NW2d 145 (2004). Thomas has failed to establish any clear error regarding this finding.

Thomas argues that the probate court's findings concerning fees related to discovery documents are also erroneous. The probate court found:

> The objection to the email/discovery objection is an objection based on a ruling that Mr. Howe objects to and that has to do what's allowable under the discovery request and Mr. Rizik—and what should have been compelled and what wasn't compelled and Mr. Rizik did the work and he should be compensated for it.

Thomas states that Rizik's fees related to "five emails," which included an e-mail to the probate court, three e-mails to the guardian, Kraig Sippell, and an e-mail to Helping Hands, the in-home care agency. Thomas states that these e-mails were the subject of a discovery motion, which the probate court denied because the e-mails at issue related to the Wallace Howe Family Trust and not the Beverly Howe Family Trust. Therefore, Thomas argues, the probate court allowed Rizik to be compensated for production of documents that the probate could did not require him to produce. However, the December 3, 2020 order on which Thomas relies in support of this argument, which he attaches as an exhibit to his brief, was issued after a November 30, 2020 hearing pertaining to Thomas's motion to compel Rizik to produce documents. The court denied the motion, concluding that Thomas's " 'blanket' request for all emails during a given time period, without providing a factual basis to this Court on how such emails would be relevant, proportional, beneficial, and/or important under the rules of discovery, is not given any weight when viewed through the eyes of this Court." The December 3 order does not pertain to documents for the Wallace Howe Family Trust. Rizik's Activity Export does not reference the November 30, 2020 hearing. Indeed, the last item listed is dated May 12, 2020. Thus, Thomas's reliance on the December 3 order issued after a November 30 hearing in support of this argument is misplaced. Thomas does not otherwise cite anything in the record supporting his assertion that the probate court improperly allowed Rizik to be compensated for documents that he never produced.

Thomas also contends that the probate court erroneously found that Rizik and his legal assistant purportedly performed 29.6 hours of services, but the Activity Export contains a total of

46.6 hours. Thomas argues that he is unable to determine which 17 hours were not billed. The probate court stated:

> In the objection the total number of hours Mr. Rizik worked is unclear. Even with my math skills which are shaky, Mr. Strehle, I was able, at the end of the bill it says 29.9 hours and I added up—I'm sorry 29.6 hours and I – that's what at the end of bill it said the total hours and then I went through and added up what Casey from his staff did and what Mr. Rizik was billing for, I didn't have a problem with it.

Our review of the record likewise confirms that a total of 20.4 hours were billed at the $300 attorney-fee rate and 9.2 hours at the $60 fiduciary-fee rate, for a total of 29.6 hours. The additional 17 hours pertain to items that were billed at cost, rather than an hourly rate. It appears that Thomas mistakenly believes that the additional 17 cost items were billed as hourly services, but the probate court properly determined that Rizik was only requesting recovery for 29.6 hours of services, and the remaining 17 items were costs that were billed at actual costs.

Thomas further argues that the probate court failed to consider the exhibit he submitted in opposition to Rizik's $300 hourly rate. Thomas submitted excerpts from the State Bar of Michigan 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report, which Thomas argued establishes that $250 is the "going rate for Mr. Rizik." Thomas does not offer any analysis of the data in support of his conclusion. Table 5 indicates that in the Flint area, the median billing rate is $216, the mean billing rate is $239, the 75th percentile rate is $292, and the 95th percentile rate is $433. Table 7 indicates that in the field of elder law, the median billing rate is $240, the mean billing rate is $250, the 75th percentile rate is $275, and the 95th percentile rate is $350. The probate court did not reference these materials, but stated:

> [I]n Genesee County, I don't always approve fees like they do in Wayne County for the 450 an hour and all this stuff but given what I've already stated, I believe that the work that he's performed and the experience and expertise and tenacity of this case, he's earned it.

The court's remarks indicate that Rizik's experience, expertise, and persistence in managing a difficult case put him in the upper range for fees in Genesee County. The court referenced Wayne County as a comparison to illustrate that $300 was not unreasonable. The fee was consistent with the upper range of data for Genesee County and elder law practice. Accordingly, the probate court did not abuse its discretion by determining that a $300 hourly fee was a reasonable rate considering Rizik's experience and expertise, and the particular challenges that confronted him in this case. The court's decision is within the range of reasonable outcomes. *In re Adams Estate*, 257 Mich App at 236; *In re Guardianship of Gerstler*, 324 Mich App 494, 507; 922 NW2d 168 (2018).

Thomas also raises additional objections in this Court that the probate court did not address. But because Thomas did not raise these objections in the probate court, the court cannot be faulted for failing to address them.

## C. *PIRGU* FACTORS

Next, Thomas argues the probate court failed to follow this Court's instructions on remand and employ the framework under *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281-282; 884 NW2d 257 (2016) for determining the reasonableness of an attorney fee. We disagree.

### 1. STANDARD OF REVIEW

"Whether the lower court properly followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Pioneer State Mut Ins*, 331 Mich App at 406 (quotation marks and citation omitted).

### 2. LAW AND ANALYSIS

In the earlier appeal, this Court instructed the probate court on remand to "follow the framework set forth in *Pirgu . . .* , which sets forth the procedure a court must follow in determining a reasonable attorney fee." *In re Beverly Howe Family Trust* (Docket No. 355094), p 4.

In *Pirgu*, our Supreme Court analyzed the calculation of attorney-fee awards under the no-fault act, MCL 500.3148(1). The Court reviewed "the current state of the law regarding the determination of a reasonable attorney fee," including attorney fees awarded under MCL 500.3148 and MCR 2.403(O) (case evaluation sanctions). *Pirgu*, 499 Mich at 274-281. The Court stated:

> In sum, we hold that when determining the reasonableness of attorney fees awarded under § 3148(1), a trial court must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services. The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure. Thereafter, the trial court must consider *all* of the remaining *Wood* [413 Mich 573,] and MRPC 1.5(a) factors to determine whether an up or down adjustment is appropriate. [*Pirgu*, 499 Mich at 281 (citations omitted).]

The Court then "distill[ed] the remaining *Wood* and MRPC 1.5(a) factors into one list to assist trial courts in this endeavor[.]" *Pirgu*, 499 Mich at 281-282. This list requires a court to consider the following factors:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

> (3) the amount in question and the results obtained,

> (4) the expenses incurred,

> (5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent.

These factors are not exclusive, and the trial court may consider any additional relevant factors. In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors. [*Pirgu,* 499 Mich at 281-282 (citations omitted).]

On remand, the probate court expressly acknowledged that it was required to apply the *Pirgu* factors, and it went on to address each of the eight specified factors, among other considerations. Thus, the record does not support Thomas's argument that the probate court failed to consider all the *Pirgu* factors. Further, having reviewed Thomas's arguments, we are not persuaded that the probate court clearly erred in its findings, or abused its discretion in its application of the factors.

## V. DOCKET NO. 360890

### A. REVIEW BY CHIEF JUDGE

Thomas argues that the probate court erred when, after denying his motion for disqualification, it refused to refer the motion for de novo review by the chief judge. We agree.

### 1. STANDARD OF REVIEW

This Court "review[s] a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo." *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017). Questions concerning the interpretation and application of a court rule involve questions of law subject to de novo review. *In re Estate of Huntington*, 339 Mich App at 16-17.

### 2. LAW AND ANALYSIS

A judge is disqualified if the judge "is biased or prejudiced for or against a party or attorney." MCR 2.003(C)(1)(a). A judge also is disqualified if "based on objective and reasonable perceptions, [the judge] has either (i) a serious risk of actual bias impacting the due process rights of a party . . . or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct." MCR 2.003(C)(1)(b). A motion to disqualify a judge is governed by MCR 2.003(D), which provides, in pertinent part:

(a) For courts other than the Supreme Court, the challenged judge shall decide the motion. If the challenged judge denies the motion,

-22-

(i) in a court having two or more judges, on the request of a party, the challenged judge shall refer the motion to the chief judge, who shall decide the motion de novo;

(ii) in a single-judge court, or if the challenged judge is the chief judge, on the request of a party, the challenged judge shall refer the motion to the state court administrator for assignment to another judge, who shall decide the motion de novo.

"The term 'shall' is mandatory." *Ellison v Dep't of State*, 320 Mich App 169, 180; 906 NW2d 221 (2017). Accordingly, the phrase "*shall* refer the motion to the chief judge, who *shall* decide the motion de novo" in the court rule indicates that referral is mandatory upon a party's request. See also *People v Gauntlett*, 134 Mich App 737, 757; 352 NW2d 310 (1984), mod 419 Mich 909 (1984) (construing "shall refer" in the predecessor rule, GCR 1963, 912.3(c)(1), as imposing a mandatory requirement).

In this case, Thomas expressly requested, in his written motion for disqualification and at the disqualification hearing, that Judge Barkey refer any denial of Thomas's motion to the chief judge for de novo review. Therefore, Judge Barkey erred when, after denying Thomas's motion for disqualification, she disregarded Thomas's request for de novo review by the chief judge. Accordingly, we remand this case to the probate court for de novo review of Thomas's motion by the chief judge.

## B. MOTION FOR STAY

Thomas also argues that the probate court abused its discretion by granting his petition for a stay, but limited the stay to proceedings related to the investigation of the medical-malpractice claim, and not the statute of limitations. We disagree.

### 1. STANDARD OF REVIEW

A trial court's decision on a motion for stay is reviewed for an abuse of discretion. *Mathis v Auto Owners Ins*, 339 Mich App 471, 480; 983 NW2d 447, 452 (2021), citing *People v Bailey*, 169 Mich App 492, 499; 426 NW2d 755 (1988).

### 2. LAW AND ANALYSIS

Thomas petitioned the probate court for a stay that would bar Riem from exercising authority as personal representative until the appeal in Docket No. 360090 was resolved. The probate court partially granted the petition, enjoining Riem from pursuing a medical-malpractice wrongful-death claim. On appeal, Thomas challenges this partial grant, arguing the stay will cause the statute of limitations to run in the medical-malpractice case and he was entitled to a more comprehensive stay of the proceedings.

We need not consider the substance of Thomas's argument. Thomas moved in this Court for a stay of all proceedings in Docket Nos. 360090 and 360890. This Court granted the stay. *In re Howe Estate*, unpublished order of the Court of Appeals, entered May 5, 2022 (Docket Nos. 360090 & 360890). Thomas thus received the relief requested. Further, Thomas's petition for a stay in the probate court was pending this Court's decision in Docket No. 360090. Because these

cases are consolidated, this Court's decision in the consolidated appeals will trigger setting aside the stay. Therefore, this issue is moot and we decline to consider it now. *Barrow v City of Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) (quotation marks and citation omitted) ("An issue is moot if an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy.").

## VI. CONCLUSION

In Docket No. 360090, we remand for further proceedings and findings regarding Thomas's objections to Riem's fees. In Docket No. 360890, we remand for de novo review by the chief judge of Thomas's motion for disqualification. We affirm in all other respects. The prevailing parties in the respective dockets may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron